**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY D. GORMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1110-CR-556 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant Hawkins, Judge
The Honorable Christine Klineman, Commissioner
Cause No. 49G05-1010-FB-81814

**June 13, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Anthony Gorman appeals his convictions for two counts of Class B felony robbery while armed with a deadly weapon. We affirm.

**Issues**

The two issues before us are:

I. whether there is sufficient evidence to identify Gorman as the perpetrator of the robberies; and

II. whether there is sufficient evidence that a deadly weapon was used during the robberies.

**Facts**

At about 2:30 a.m. on August 14, 2010, husband and wife Byron and Samantha Daniels returned to their apartment complex in Indianapolis. They were sitting in their vehicle smoking a cigarette with the windows down when a man and a woman they did not know approached and asked for a light. After Byron and Samantha provided a light, the man and woman walked away. Soon thereafter, the man returned and pointed a handgun at Byron's temple through the driver's side window. He demanded that Byron and Samantha give them money and jewelry. After Samantha gave the man $5 and Byron gave him an earring, he ran away.

The Danielses called police immediately after the robbery, but the police were unable to locate a suspect at that time. Several weeks after the robbery, Samantha saw a person—Gorman—sitting on a neighbor's porch whom she believed to be the robber. After contacting police, Samantha was presented on October 10, 2010, with a police

2

photo array that included Gorman's picture, and she identified Gorman as the robber. Police did not find any other evidence connecting Gorman with the robbery, such as the gun he used or the proceeds from the robbery.

On October 27, 2010, the State charged Gorman with two counts of Class B felony robbery while armed with a deadly weapon. At Gorman's bench trial on September 8, 2011, Samantha identified him as the person who had robbed her and Byron and stated she was "a hundred percent" certain that Gorman was the robber. Tr. p. 32. Byron was unable to identify Gorman as the robber because he had been looking straight forward during most of the incident while the gun was aimed at his head. As for the gun, Byron, who stated he was familiar with guns, believed it looked like a 9mm semiautomatic. Samantha, who said she was not familiar with guns, could only describe the gun as smaller than a typical police officer's gun. The trial court found Gorman guilty as charged and sentenced him accordingly. Gorman now appeals.

**Analysis**

Both of Gorman's arguments raise challenges to the sufficiency of the evidence supporting his convictions. When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses, and respect the fact-finder's exclusive province to weigh conflicting evidence. Jackson v. State, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences therefrom that support the conviction. Id. We will affirm if the

3

probative evidence and reasonable inferences from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.  Id.

### I.  Identification Evidence

Gorman asserts that there is insufficient evidence to support Samantha's identification of him as the person who robbed her and Byron.  He argues that in a case involving a sole eyewitness's identification of a stranger as the perpetrator of a crime, there should be some evidence corroborating the identification in order for there to be sufficient evidence to support a conviction.[1]  As Gorman acknowledges, there is longstanding precedent from our supreme court holding that where a defendant's conviction is based upon his or her identification as the perpetrator by a sole eyewitness, such identification is sufficient to sustain a conviction if the identification was unequivocal.  Richardson v. State, 270 Ind. 566, 569, 388 N.E.2d 488, 491 (1979).  See also Scott v. State, 871 N.E.2d 341, 344-45 (Ind. Ct. App. 2007) (collecting and analyzing cases from our supreme court and holding that if identification evidence by a sole eyewitnesses is equivocal, the identification must be corroborated by circumstantial evidence), trans. denied.  Here, Samantha's in-court identification of Gorman as the robber was unequivocal, in that she stated that she was "a hundred percent" certain of the identification.  Tr. p. 32.  Under established precedent of our supreme court, this alone was sufficient to support Gorman's convictions.  We cannot reconsider or declare invalid that precedent.  See Horn v. Hendrickson, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005).

---

[1] Gorman does not argue for such a rule where the eyewitness knows the identified person.

4

Although we cannot overrule Richardson, it would not be inappropriate for us to question its validity or to suggest to our supreme court that the rule therein be reconsidered. See id. at 694-95. Gorman argues that basing his conviction solely upon the basis of one eyewitness's uncorroborated testimony violates his rights to due process, to a fair trial, and to due course of law under the United States and Indiana Constitutions. As we recently acknowledged, this court is "very cognizant of the close scrutiny eyewitness identification in criminal cases has received in recent years . . . ." Woodson v. State, 961 N.E.2d 1035, 1044 (Ind. Ct. App. 2012), trans. denied. Gorman directs us to a number of cases and studies that have examined reliability issues that may arise with eyewitness identifications. There are also, we cannot deny, a number of reported instances of persons having been falsely convicted on the basis of inaccurate eyewitness identifications. See, e.g., Sandra Guerra Thompson, Beyond a Reasonable Doubt? Reconsidering Uncorroborated Eyewitness Identification Testimony, 41 U.C. Davis L. Rev. 1487, 1490 (2008).

The New Jersey Supreme Court recently undertook a very thorough examination of the current state of scientific research regarding eyewitness identifications and listed a number of factors that may affect the reliability of an identification. See State v. Henderson, 27 A.3d 872 (N.J. 2011). First, high levels of stress tend to diminish a witness's ability to make an accurate identification. Id. at 904. Second, the use of a visible weapon during a crime can distract a witness from the perpetrator and reduce the reliability of an identification. Id. at 904-05. Third, the duration of a criminal event,

5

which witnesses tend to overestimate, may affect reliability. Id. at 905. Fourth, as common sense would indicate, the greater the distance and the poorer the lighting conditions, the less reliable an identification tends to be. Id. at 906. Fifth, characteristics of the witness may impact reliability, with either very young or older witnesses and, of course, witnesses under the influence of drugs or alcohol, tending to be less accurate. Id. Sixth, changes in facial features between the time of initial observation and a subsequent identification will reduce reliability, as may (unsurprisingly) the use of a disguise by the perpetrator. Id. at 907. Seventh, because of "memory decay," the greater the period of time between observation and identification to law enforcement, the greater the chance of identification error, although the amount of time needed to pass before a person's recall becomes unreliable is not scientifically established. Id. Eighth, cross-racial identifications tend to be less accurate. Id. Ninth, influence or feedback from co-witnesses about identification of a perpetrator can affect reliability. Id. at 908-09. Finally, as this court observed in Scott, there are studies finding that there is no correlation between a witness's stated confidence in his or her identification of a defendant and the actual accuracy of that identification. Scott, 871 N.E.2d at 345 n.7.

Gorman argues that a number of the factors identified in Henderson weigh against the reliability of Samantha's identification of him as the robber, including a highly stressful event, the presence of a gun, poor lighting conditions, an allegedly short duration for the event, and the passage of time between the event and her initial identification of Gorman. He also argues that no weight should be given to Samantha's

6

stated "a hundred percent" certainty that he was the robber, given the studies identified in footnote seven of <u>Scott</u>. Tr. p. 32. On the other hand, there are several factors identified in <u>Henderson</u> that were not present here, including the close proximity between Samantha and the robber, the fact that this was not a cross-racial identification, that she apparently is of an age group whose identifications tend to be more reliable, there is no evidence the robber used a disguise, and there is no evidence of co-witness influence on her identification, as Byron never identified Gorman as the robber. We also note that, as stated in <u>Henderson</u>, a factor such as poor lighting conditions is a matter of common knowledge; also, factors such as the duration of the event and the passage of time between the event and identification are not readily quantifiable in terms of how they impact identifications.

In sum, we have just described a process of weighing evidence and judging witness credibility, in which appellate courts should not engage. We believe it would be unwise to alter the rule stated in <u>Richardson</u> to provide appellate courts essentially with the ability to second-guess a fact-finder's assessment of an eyewitness's testimony, or to require proof in addition to such testimony, in contravention of well-established legal principles. We find support for this position in a recent decision from the United States Supreme Court, <u>Perry v. New Hampshire</u>, -- U.S. --, 132 S. Ct. 716 (2012).

In <u>Perry</u>, the Court was asked to hold that the Due Process Clause required "trial judges to prescreen eyewitness evidence for reliability any time an identification is made under suggestive circumstances," regardless of whether law enforcement arranged the

7

suggestive circumstances. <u>Perry</u>, -- U.S. at --, 132 S. Ct. at 725. The Court rejected this argument in an 8-1 decision, holding that no such prescreening was required where law enforcement did nothing to arrange any suggestive circumstances regarding the identification. <u>Id.</u>, 132 S. Ct. at 730. In reaching this holding, the Court did "not doubt either the importance or the fallibility of eyewitness identifications." <u>Id.</u>, 132 S. Ct. at 728. It stated, however, "the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." <u>Id.</u>, 132 S. Ct. at 728. It further recognized that a fact-finder, not a court (unless of course, as here, it is the fact-finder), "traditionally determines the reliability of evidence." <u>Id.</u>, 132 S. Ct. at 728. It then listed a number of procedural safeguards against fact-finders placing undue weight on potentially unreliable eyewitness testimony, including the Sixth Amendment right to confront and cross-examine eyewitnesses, the right to the effective assistance of counsel and to present opening and closing argument regarding eyewitness credibility, and the right to conviction only upon proof beyond a reasonable doubt. <u>Id.</u>, 132 S. Ct. at 728-29. It also noted the possibility of giving jury instructions that list factors to consider in weighing eyewitness testimony, of trial judges excluding evidence whose probative value is substantially outweighed by the danger of unfair prejudice, and that "[i]n appropriate cases, some States also permit defendants to present expert testimony on the hazards of eyewitness identification evidence." <u>Id.</u>, 132 S. Ct. at 728-29.

Here, trial counsel did extensively cross-examine Samantha regarding her identification and argued to the trial court regarding the reliability of her identification.

8

We also presume the trial court as fact-finder was well aware that Gorman could be convicted only upon proof beyond a reasonable doubt.[2]  All of Gorman's constitutional rights to challenge the evidence against him were adequately preserved.  The reliability of particular evidence must be gauged by the fact-finder, not this court.  Any potential errors in eyewitness identification must be resolved during trial, not on appeal.

We further observe, "[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." Patterson v. New York, 432 U.S. 197, 208, 97 S. Ct. 2319, 2326 (1977).  There would be potentially substantial criminal justice costs if a sole eyewitness's identification of a defendant were not enough to sustain a conviction.  Often times, despite the efforts of law enforcement, there simply is no other evidence to be found.  We decline to recommend to our supreme court that it alter the rule stated in Richardson that a sole eyewitness's unequivocal testimony identifying a defendant as the perpetrator of a crime alone is sufficient to sustain a conviction.

## II. Deadly Weapon

Next, Gorman asserts that even if Samantha accurately identified him, there is insufficient evidence that he possessed a deadly weapon when he robbed the Danielses. Robbery is a C felony that may be elevated to a B felony, as here, if there is proof that it was committed while armed with a deadly weapon.  Ind. Code § 35-42-5-1.  Gorman was

---

[2] Trial counsel did not elect to obtain an expert to testify regarding eyewitness identifications, although such testimony is permitted in Indiana under certain circumstances.  See Cook v. State, 734 N.E.2d 563, 570 (Ind. 2000).

specifically alleged to have been armed with a gun, which is a statutorily-defined deadly weapon. See I.C. § 35-41-1-8(a)(1). Gorman notes that the purported gun he used during the robbery was never recovered and that Samantha and Byron seemed to be inconsistent in their descriptions of the weapon. Thus, he claims, there is a lack of sufficient evidence that what he possessed was an actual, functioning firearm or deadly weapon, as opposed to possibly a toy.

In order to prove that a weapon was used in the commission of a crime, it is not necessary to introduce the weapon into evidence at trial. Gray v. State, 903 N.E.2d 940, 943 (Ind. 2009). There must, however, be some proof that the defendant was actually armed with a deadly weapon at the time of the crime. Id. at 943-44. It is not enough if a victim merely feared that the defendant was armed with a deadly weapon, but no such weapon was shown or displayed and/or the defendant made no statements that he or she was armed. Id. at 943-44. However, a victim's testimony that he or she saw the defendant use what was believed or "figured" to be a gun is, by itself, sufficient proof of the use of a deadly weapon. Harvey v. State, 542 N.E.2d 198, 200-01 (Ind. 1989).[3]

Here, Byron testified that he was familiar with firearms and that the robber possessed what looked like a 9mm semiautomatic handgun. Gorman argues that Samantha's description of the weapon was inconsistent with Byron's description of it. She also testified that she was not very familiar with firearms, unlike Byron; in any event,

---

[3] We note that although Gray clarified the law regarding the quantum of proof necessary to establish possession of a deadly weapon by a defendant, it cited Harvey with approval and there is no indication Harvey is not still valid authority. See Gray, 903 N.E.2d at 945.

10

she also indicated that Gorman possessed a handgun of some type, which is consistent with Byron's testimony. It was for the trial court here as fact-finder to consider and weigh any discrepancies between Samantha's and Byron's testimony. That testimony was, by itself, sufficient to prove that Gorman committed the robberies while armed with a deadly weapon.

## Conclusion

There is sufficient evidence to support Gorman's convictions for two counts of Class B felony robbery. We affirm.

Affirmed.

BAKER, J., and BROWN, J., concur.

11