**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 19 2013, 5:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK F. JAMES**
Anderson, Agostino & Keller, P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.D.M., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1303-JV-109 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable James Fox, Judge
Cause No. 71J01-1301-JD-5

**September 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

J.D.M. appeals his adjudication as a delinquent child for committing an act that would be dangerous possession of a firearm, a Class A misdemeanor. We affirm.

## Issue

The sole issue before us is whether there is sufficient evidence to support the true finding that J.D.M. committed dangerous possession of a firearm.

## Facts

The evidence most favorable to the true finding reveals that, on November 30, 2012, Juanita Mincey was at her home in South Bend with her mother, Kathy Mincey. From inside her house, Juanita saw her nephew, Treonn Hardin, and J.D.M. talking in a nearby alley. J.D.M. then approached the house, removed what appeared to be a sawed-off shotgun from his pants, and fired it toward Juanita's house. Buckshot penetrated the house, and Kathy could feel it fly past her head. J.D.M. then ran away while carrying the shotgun, as observed by Juanita and Kathy, and Juanita called 911. Juanita told the 911 operator that she did not know the shooter's name. However, when police arrived on the scene, she was able to name J.D.M. as the shooter.

On January 3, 2013, the State filed a petition alleging that J.D.M., who was sixteen, was a delinquent child for committing what would be Class A misdemeanor dangerous possession of a firearm and Class D felony criminal recklessness if committed by an adult. J.D.M. denied the allegations. On January 30, 2013, after conducting a fact finding hearing, the trial court found that J.D.M. had committed dangerous possession of

a firearm but not that he had committed criminal recklessness, and adjudicated J.D.M. to be delinquent accordingly. J.D.M. now appeals.

**Analysis**

J.D.M. argues that there is insufficient evidence to support his delinquency adjudication. When reviewing such a claim, we do not reweigh the evidence or judge the credibility of witnesses. D.W. v. State, 903 N.E.2d 966, 968 (Ind. Ct. App. 2009), trans. denied. We look only to probative evidence supporting the adjudication and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude beyond a reasonable doubt that the juvenile had committed a prohibited act. Id. We will not set aside a delinquency adjudication if there is substantial evidence of probative value to support it. Id. The uncorroborated testimony of an eyewitness may be sufficient by itself to sustain an adjudication of delinquency on appeal. Id.

A child who knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in Indiana Code Section 35-47-10-1 commits dangerous possession of a firearm. Ind. Code § 35-47-10-5. J.D.M. concedes that none of the exceptions in Section 35-47-10-1, such as use of a firearm while hunting with a license or possessing a firearm at home with a parent or guardian's permission, applies here. Both Juanita and Kathy unequivocally identified J.D.M. in court as having been in possession of what appeared to be an operational sawed-off shotgun, which he fired into the residence. Although the firearm J.D.M. possessed was not introduced into evidence,

this testimony was sufficient to support J.D.M.'s delinquency adjudication. See Gorman v. State, 968 N.E.2d 845, 850-51 (Ind. Ct. App. 2012) (holding that when State must prove possession of firearm in commission of crime, the weapon need not be introduced at trial and conviction may be based on witness's testimony that he or she saw defendant in possession of what appeared to be a gun), trans. denied.

J.D.M. alleges that the testimony of Juanita and Kathy was incredibly dubious. Under the "incredible dubiosity rule," we may impinge upon a fact finder's responsibility to judge witness credibility if we are confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredibility dubiosity. Young v. State, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), trans. denied. We may reverse under this rule only if a sole witness presents inherently improbable or incredibly dubious testimony and there is no circumstantial evidence of the defendant's guilt. Id.

We reject J.D.M.'s invocation of the incredible dubiosity rule. First, his delinquency adjudication was not based on the testimony of a sole witness, but two witnesses—both of whose testimony was unequivocal and not in any way inherently improbable. Second, J.D.M. attempts to raise concerns about Juanita's and Kathy's ability to accurately identify him as the person they saw outside their home possessing a firearm, based on Juanita's not having seen him for approximately one year before the incident and Kathy having never seen him before that day. Indiana courts, however, leave the judging of the accuracy of eyewitness identifications within the purview of fact finders and appellate courts will not reweigh their determinations. See Gorman, 968

4

N.E.2d at 849. Third, J.D.M. questions Juanita's in-court identification of him because she was unable to name him as the perpetrator in the initial 911 call. It is well-settled, however, that any inconsistencies between a witness's trial testimony and earlier pre-trial statements do not necessarily render the trial testimony incredibly dubious. Young, 973 N.E.2d at 1226-27. Also, Juanita explained at trial that her inability to remember J.D.M.'s name at the time of the 911 call was due to her shock at what had just happened. In sum, the incredible dubiosity rule does not warrant reversal of J.D.M.'s delinquency adjudication.

J.D.M. also contends the trial court should have accepted the alibi testimony of his grandfather, with whom J.D.M. was living at the time of the incident and who testified that J.D.M. was supposed to be grounded on that day and to his knowledge did not leave the house that day until after the incident would have occurred. We review rejection of an alibi defense as we do any other sufficiency matter—i.e., we will not reweigh evidence or judge witness credibility. Thompson v. State, 728 N.E.2d 155, 159 (Ind. 2000). "The State is not required to rebut directly a defendant's alibi but may disprove the alibi by proving its own case-in-chief beyond a reasonable doubt." Id. Here, the State adequately proved its case-in-chief through Juanita's and Kathy's testimony, which was sufficient to rebut the alibi defense. The trial court was not required to believe J.D.M.'s grandfather at all, or it could have believed J.D.M. was able to sneak out of the house without his knowledge.

J.D.M. further argues that the State failed to prove that he possessed a sawed-off shotgun. He relies upon Indiana Code Section 35-47-1-10, which defines "sawed-off shotgun" as: "(1) a shotgun having one (1) or more barrels less than eighteen (18) inches in length; and (2) any weapon made from a shotgun (whether by alteration, modification, or otherwise) if the weapon as modified has an overall length of less than twenty-six (26) inches." It is true that the State presented no evidence as to the precise length of the weapon J.D.M. possessed and, as noted earlier, did not introduce the actual weapon into evidence.

This lack of evidence could have been problematic if J.D.M. was alleged to have committed dealing in or possession of a sawed-off shotgun under Indiana Code Section 35-47-5-4.1. But he was not. To the extent the State specifically alleged in the delinquency petition that J.D.M. possessed a sawed-off shotgun, the precise type of firearm that J.D.M. possessed was not a necessary element of the charge of dangerous possession of a firearm. The State did not have to prove that J.D.M. possessed a sawed-off shotgun that met the definition of a "sawed-off shotgun" that would be illegal for anyone, adults included, to possess. In the context of charging informations in criminal cases, it is clear that unnecessary descriptive material or allegations that are not essential to a charge and that may be omitted without affecting the sufficiency of the charge are mere surplusage and do not need to be proven by the State. Bonner v. State, 789 N.E.2d 491, 493 (Ind. Ct. App. 2003). We see no reason why the same rule would not apply to allegations in a petition alleging delinquency. We conclude the State was not required to

6

prove that J.D.M. possessed a sawed-off shotgun that met the statutory definition of a "sawed-off shotgun" to prove the charged allegation.

Finally, J.D.M. suggests it was illogical for the trial court to find that he committed dangerous possession of a firearm but not criminal recklessness, as the evidence regarding both charges was essentially identical and overlapping. Our supreme court has held that "[j]ury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable." Beattie v. State, 924 N.E.2d 643, 649 (Ind. 2010). The court observed that in the event two different verdicts appear logically inconsistent, it simply could mean the jury exercised its well-recognized right to exercise lenity and not to convict a defendant of all charged offenses. Id. at 648. It further held that a defendant is adequately protected from illogical jury verdicts by appellate review for sufficiency of the evidence. Id. at 649 (quoting United States v. Powell, 469 U.S. 57, 67, 105 S. Ct. 471, 478 (1984)). Again, although Beattie specifically addressed criminal jury trials, its logic equally applies to delinquency rulings that are claimed to be inconsistent, contradictory, or irreconcilable. It is conceivable that the court decided to be lenient upon J.D.M. and not enter a finding upon the record that he had committed a Class D felony, but had only committed a Class A misdemeanor. In any event, we need not conclusively establish a logical reason why the trial court here decided to find J.D.M. had committed dangerous possession of a firearm but not criminal recklessness. It suffices to say that there was sufficient evidence to support the true finding that the trial court did make.

7

## Conclusion

There is sufficient evidence to support J.D.M.'s delinquency adjudication for committing dangerous possession of a firearm. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.