Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**GREGORY L. FUMAROLO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DEADRIAN BOYKINS,                    )
                                     )
   Appellant-Defendant,          )
                                     )
      vs.                )   No. 02A05-1312-CR-642
                                     )
STATE OF INDIANA,                    )
                                     )
   Appellee-Plaintiff.           )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1304-MR-5

**September 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Deadrian Boykins appeals his conviction of murder and sixty-five-year sentence. He argues that the evidence is insufficient to support his conviction because only one eyewitness was able to identify him and the evidence was not sufficient to disprove his alibi defense. Finding that the unequivocal identification testimony of one eyewitness is sufficient to support Boykins' conviction, and that the State sufficiently rebutted Boykins' alibi defense by proving its own case-in-chief, we affirm Boykins' murder conviction. Boykins also challenges his sixty-five-year sentence. Boykins has waived his argument that the trial court erred in failing to find his youth as a mitigating factor because he failed to raise it at trial. Waiver notwithstanding, because Boykins appears to be a hardened and purposeful criminal despite his young age, we find no error in the trial court's failure to find Boykins' youth to be a mitigating factor. We also find that Boykins has failed to persuade us that his sentence is inappropriate where he has an extensive legal history and shot the unarmed victim nine times, including three times in the back.

**Facts and Procedural History**

At approximately 12:30 p.m. on April 3, 2013, after eating lunch at Shontina Merriweather's house, seventeen-year-old Elijah Freeman stepped out on the front porch to smoke a cigarette. Shortly thereafter, Oster Jackson was walking home from a nearby bus stop when he saw Freeman on the front porch talking to eighteen-year-old Boykins and another man. Jackson recognized Boykins as someone he had seen almost every day around the neighborhood for the past three or four years. Jackson had seen Boykins at Merriweather's house many times.

Jackson walked into his house, prepared his lunch, and sat down at a table in the garage to eat. As he took a bite of his sandwich, he heard a gunshot, looked out the window, and saw Boykins chasing Freeman "toward the back yard, steady shooting at him, constantly shooting at him." Tr. p. 135. As the two men reached the back of the house, Freeman fell and struggled to get back up as Boykins was "steady firing at him the whole time . . . ." *Id.* at 137. Boykins did not stop shooting until he ran out of bullets. He then ran around to the front of the house and told the third man it was time to leave because he had finished his job.

Freeman telephoned 911. When Fort Wayne Police Department Officer James Payne arrived, Jackson told him that he saw it all and that Boykins "shot that boy like a dog." *Id.* at 223. Jackson later identified Boykins in a photo array. The State charged Boykins with murder.

At trial, Jackson testified that although Boykins was wearing a black hooded sweatshirt with the hood up, Jackson "got a real good look at him" and saw his face. *Id.* at 139. Other witnesses testified that they heard shots or saw the shooting, but they were unable to identify the shooter. Dr. Pramod Carpenter, who performed the autopsy on Freeman, testified that the cause of Freeman's death was "gun shot wounds to the back." *Id.* at 272. Dr. Carpenter further testified that Freeman had nine bullet wounds, three in the back, one in the buttock, two in the shoulder, one in the thigh, one in the forearm, and one in the wrist. Fort Wayne Police Department Officer Teresa Trimble-Holloway testified that she discovered eleven shell casings in the yard, which meant that eleven separate shots

3

had been fired.  Officer Trimble-Holloway also found two gunshot holes in Merriweather's house and noticed that one of the bullets had entered the house.

Boykins denied killing Freeman.  Specifically, he testified that on April 3, he woke up at his mother's house between 11:30 a.m. and 12:00 p.m. and did not leave the house until between 2:00 p.m. and 3:00 p.m.  According to Boykins, when he left the house, he was wearing a gray and red hooded sweatshirt.  Boykins' mother testified that Boykins did not wake up that day until between 12:00p.m. and 1:00 p.m.  However, on rebuttal, Fort Wayne Police Department Detective Taya Strausborger testified that Boykins' mother initially told the detective that she did not get up until 2:00 p.m. on Saturday, April 3.  After hearing all of the evidence, the jury convicted Boykins of murder.

At the sentencing hearing, the following colloquy ensued between Freeman's mother and Boykins:

FREEMAN'S MOTHER: I am just so upset right now because he just took my son from me for no reason, and I want you to pay for what you did to my son.  Because you really did hurt my son, and I will never be able to see my son again because of you.

BOYKINS: Man, f*** you.  I ain't did sh**.

TRIAL COURT: Hey . . . hey, hey.  Mr. Boykins, that's very disrespectful and I will not tolerate your fo[u]l mouth in this courtroom, sir.  I've treated you with respect.  I expect that you treat the proceedings respectfully as well, sir.  Is there anything else, ma'am, that you wanted to say?

FREEMAN'S MOTHER: I hope my son torture[s] you for the rest of your life.  And I hope that Judge gives you everything you deserve, everything, the max.

BOYKINS: I give it back.

4

FREEMAN'S MOTHER: Now, the max.

BOYKINS: And I give it back.

FREEMAN'S MOTHER: Yeah, I'm done.

Sent. Tr. p. 7.

Also at the sentencing hearing, Boykins' presentence investigation report revealed an extensive legal history. Specifically, Boykins has seven juvenile delinquency adjudications, one of which would have been a felony if committed by an adult, and one adult felony conviction for orchestrating a Class B felony robbery at the beauty college where he was a student.

The trial court found that Boykins' juvenile and adult criminal records and failed efforts at rehabilitation were aggravating factors. The trial court also found as an aggravating factor that Boykins acted reprehensibly, disrespectfully, and vulgarly in court. The trial court found no mitigating factors and sentenced him to a sixty-five-year executed sentence. Boykins appeals his conviction and sentence.

## Discussion and Decision

## I. Sufficiency of the Evidence

Boykins contends that the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans. denied.* We consider only the probative evidence and the reasonable inferences therefrom that support the conviction. *Id.* We will affirm if the

probative evidence and reasonable inferences from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

## A. Identification Evidence

Boykins first argues that there is insufficient evidence to support his murder conviction because there was only one eyewitness who identified him as the shooter. However, as Boykins acknowledges, "there is longstanding precedent holding that where a defendant's conviction is based upon his identification as the perpetrator by a sole eyewitness, such identification is sufficient to sustain the conviction if the identification is unequivocal. *Richardson v. State*, 388 N.E.2d 488, 491 (Ind. 1979)." Appellant's Br. p. 11. *See Gorman*, 968 N.E.2d at 850 (explaining that the "reliability of particular evidence must be gauged by the fact-finder, not this court. Any potential errors in eyewitness identification must be resolved during trial, not on appeal.")

Here, Jackson's identification of Boykins as the shooter was unequivocal. Specifically, Jackson testified that although Boykins was wearing a black hooded sweatshirt with the hood up, Jackson got a good look at Boykins' face. Jackson further explained that he recognized Boykins as someone he had seen almost every day around the neighborhood for the past three to four years. Jackson also testified that he had seen Boykins at Merriweather's house many times. This unequivocal eyewitness identification is sufficient to support Boykins' conviction.

## B. Alibi Evidence

Boykins also argues that the evidence presented was not sufficient to disprove his alibi defense. The State is not required to rebut directly a defendant's alibi but may

6

disprove the alibi by proving its own case-in-chief beyond a reasonable doubt. *Thompson v. State*, 728 N.E.2d 155, 159 (Ind. 2000). Here, the State adequately proved its case-in-chief through Jackson's testimony, which was sufficient to rebut the alibi defense.

## II. Sentencing

Boykins also argues that the trial court erred in sentencing him. Specifically, he argues that the sentence imposed by the trial court was inappropriate in light of his age. A trial court's sentencing order is reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

### A. Mitigating Circumstance

To the extent Boykins is challenging the trial court's failure to consider his age as a mitigating factor, we note that Boykins has waived appellate review of this issue because he failed to raise it to the trial court. *See Creekmore v. State*, 853 N.E.2d 523, 530 (Ind. Ct. App. 2006) (stating that a defendant who fails to argue a mitigating circumstance to the trial court may not do so for the first time on appeal).

Waiver notwithstanding, we find no error. A defendant who claims that the trial court failed to identify or find a mitigating factor must establish that the mitigating evidence was both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. A defendant's youth, although not identified as a statutory mitigating factor, is a significant mitigating factor in some circumstances. *Brown v. State*, 720 N.E.2d 1157,

7

1159 (Ind. 1999). However, youth is not automatically a significant mitigating factor. *Gross v. State*, 769 N.E.2d 1136, 1141, n.4 (Ind. 2002). "There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." *Ellis v. State*, 736 N.E.2d 731, 736 (Ind. 2000).

Here, we agree with the State that Boykins appears to be a hardened and purposeful criminal despite his young age. He has an extensive legal history, which includes seven juvenile delinquency adjudications, one of which would have been a felony if committed by an adult, and one adult Class B felony conviction. He was also vulgar and disrespectful during the court proceedings. The trial court did not err in failing to consider his age as a mitigating factor.

### B. Inappropriate Sentence

To the extent Boykins argues that his sentence is inappropriate, the Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decisions. *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014). We implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence in inappropriate in light of the nature of the offense and the character of the offender. *Id.* Boykins bears the burden on appeal of showing us that his sentence is inappropriate. *Brock v. State*, 983 N.E.2d 636, 642 (Ind. Ct. App. 2013).

Concerning the nature of the offense, in the middle of the afternoon, Boykins chased an unarmed Freeman through Merriweather's yard while shooting at him eleven times. Freeman was hit nine times, three times in the back. One of those shots in the back killed

Freeman. One of the witnesses compared Boykins' shooting of Freeman to the shooting of a dog. In addition, two of the shots hit Merriweather's house, and one of the bullets entered the house.

Concerning the character of the offender, Boykins appears to be a hardened and purposeful criminal despite his young age. He has an extensive legal history, which includes seven juvenile delinquency adjudications, one of which would have been a felony if committed by an adult, and one adult Class B felony conviction. He was also vulgar and disrespectful during the court proceedings.

In light of the nature of the offenses and his character, Boykins has failed to persuade us that his sixty-five-year sentence is inappropriate.

Affirmed.

FRIEDLANDER, J., and MAY, J. concur.