## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2017, 9:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Billy Guyton,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 28, 2017

Court of Appeals Case No.
49A02-1606-CR-1434

Appeal from the Marion Superior Court

The Honorable Richard Hagenmaier, Commisssioner

Trial Court Cause No.
49G04-1510-F3-36181

**Barnes, Judge.**

# Case Summary

[1] Billy Guyton appeals his convictions for Level 3 felony robbery and Level 5 felony intimidation. We affirm.

# Issue

[2] The sole issue is whether the trial court properly refused to allow Guyton to show a video to the jury regarding eyewitness identification.

# Facts

[3] On October 8, 2015, Jorge Gutierrez stopped at a gas station convenience store in Indianapolis to buy cigarettes while his wife and children waited in the car. As Gutierrez was leaving the store and walking back to his car, he was approached by two young African-American men. One of them pointed a gun at Gutierrez, and they both demanded that he give them "everything you have." Tr. p. 72. Gutierrez gave them his cell phone, wallet, and cigarettes; they took the cash from the wallet, threw the wallet back at Gutierrez, and called him a racial slur.

[4] Gutierrez drove his wife and children home and then returned to the gas station and called police. While Gutierrez was speaking with the dispatcher, he saw the robbers come back to the gas station, but wearing different clothes, and then walk toward a nearby apartment complex. Gutierrez provided a description of the robbers to police. Police detained Guyton at the apartment complex shortly thereafter because he matched Gutierrez's description. Guyton had attempted to run away from police; when they caught him and patted him down, they

discovered a cell phone and a pack of cigarettes. The cell phone belonged to Gutierrez and the cigarettes were the same brand that he had just purchased. Gutierrez subsequently identified Guyton as one of his robbers, the one without the gun, in a show-up identification and in a photo array.

[5] The State charged Guyton with Level 3 felony robbery and Level 5 felony intimidation. At Guyton's jury trial, defense counsel requested during voir dire and again during closing argument to show a video to the jurors. The video was of an experiment called "The Invisible Gorilla." Tr. p. 170. In the video, which is titled "Selective Attention Test from Simons & Chabris (1999)," a narrator instructs the viewer to count how many times players wearing white shirts pass a basketball. Then, the video shows three persons wearing white shirts and three persons wearing black shirts passing two basketballs back and forth; while they are doing so, an individual wearing a gorilla costume walks between them. Afterwards, the narrator states the correct number of passes by persons wearing white shirts and then says, "But did you see the gorilla?!" Ex. A. The apparent implication of the video is that the average person asked to concentrate on the number of passes by persons wearing white shirts would not have noticed the gorilla.

[6] Defense counsel submitted the video to the trial court as part of his offer to prove and engaged in the following conversation with the trial court:

> [Defense counsel]: The video is a selective authentication test. It portrays the visual kind of experiment that demonstrates the difficulty of eyewitness testimony. . . . We would just like to play

this in closing just to show the jury the difficulty of eyewitness identification. The video is not related to the case in any way. . . .

\* \* \* \* \*

THE COURT: Okay. I will accept that as part of the record for an Offer to Prove. I just want to reiterate my prior ruling that this is a test or a study that is done outside the context of the trial. It is not subject to cross exam by the other party. I think it is inappropriate to interject that to the jury. I mean, I tell the jury every night when they leave not to do experiments or consult YouTube and things like that so I think that is in that nature. We will accept that for an Offer to Prove.

[Defense counsel]: I'm sorry. One more thing. I intended to offer that only as demonstrative and not substantive.

THE COURT: Okay. Well, it has to be demonstrative of something. Okay? It is demonstrative of a test that was done outside the presence of this courtroom . . . .

Tr. pp. 170-72.

[7] The jury found Guyton guilty as charged, and he was convicted and sentenced accordingly. He now appeals.

# Analysis

[8] Guyton argues the trial court erred in refusing to allow him to show the "Invisible Gorilla" video to the jury. We will reverse a conviction based on a trial court's evidentiary rulings only for an abuse of discretion resulting in

prejudicial error. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). "A trial court abuses its discretion when its ruling is either clearly against the logic and effect of the facts and circumstances before the court, or when the court misinterprets the law." *Id.*

[9] Guyton contends the video was only demonstrative evidence and, therefore, did not have to meet the higher standards for the admission of substantive evidence. "Demonstrative evidence is evidence offered for purposes of illustration and clarification." *Wise v. State*, 719 N.E.2d 1192, 1196 (Ind. 1999). Such evidence is admissible "if it sufficiently explains or illustrates relevant testimony as to be a potential help to the trier of fact." *Dunlap v. State*, 761 N.E.2d 837, 842 (Ind. 2002). Photographs and videos are treated as demonstrative evidence when they are "'used merely as a nonverbal method of expressing a witness' testimony and is admissible only when a witness can testify it is a true and accurate representation of a scene personally viewed by that witness.'" *Rogers v. State*, 902 N.E.2d 871, 876 (Ind. Ct. App. 2009) (quoting *Bergner v. State*, 397 N.E.2d 1012, 1014 (Ind. Ct. App. 1979)). If a photo or video does not meet this requirement, it may be admitted as substantive evidence under the "silent witness" theory. *Id.* This theory applies primarily to things such as security camera footage, and to be admissible "'there must be a strong showing of authenticity and competency . . . .'" *Id.* (quoting *Edwards v. State*, 762 N.E.2d 128, 136 (Ind. Ct. App. 2002), *trans. denied*).

[10] The video Guyton wished to enter into evidence was completely untethered to any witness's testimony. It did not directly connect to or explain any other

evidence or testimony, or accurately represent any scene related to the case. It does not fit within the classic definition of demonstrative evidence. Nor is it a "silent witness" to any fact related to the crime.

[11] Rather, it is clear Guyton wanted to introduce the video as independent substantive evidence related to the question of the reliability of eyewitness testimony. We are aware that question has been subject to significant scientific testing and litigation in recent years. *See generally Gorman v. State*, 968 N.E.2d 845, 848-850 (Ind. Ct. App. 2012) (discussing scientific research and court cases regarding eyewitness identification), *trans. denied*. Defendants certainly are entitled to present evidence on this question, but they do not have carte blanche to introduce evidence in any form they choose or in disregard of the rules of evidence. There are a number of procedural safeguards against fact-finders placing undue weight on potentially unreliable eyewitness testimony. *Id.* at 849-50 (citing *Perry v. New Hampshire*, 565 U.S. 228, 132 S. Ct. 716 (2012)). These include "the Sixth Amendment right to confront and cross-examine eyewitnesses, the right to the effective assistance of counsel and to present opening and closing argument regarding eyewitness credibility, and the right to conviction only upon proof beyond a reasonable doubt." *Id.* at 850 (citing *Perry*, 565 U.S. at 245-46, 132 S. Ct. at 728-29). Also, jury instructions may be given listing factors to consider in weighing eyewitness testimony, trial courts may exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice, and "'[i]n appropriate cases . . . defendants [are

allowed] to present expert testimony on the hazards of eyewitness identification evidence.'" *Id.* (quoting *Perry*, 565 U.S. at 247, 132 S. Ct. at 729).

If the video in this case was to be introduced at all, at a minimum it needed to be accompanied by expert testimony explaining its relevance to the case. Such testimony would have to be subject to the admissibility requirements of Indiana Evidence Rule 702. Furthermore, the State would be entitled to cross-examine such a witness; it could not cross-examine the video, as the trial court noted. We cannot say for sure whether the video would be admissible even if accompanied by such testimony. We can confidently hold, however, that it could not be admitted into a vacuum, with no direct relevance to this case, and no explanation or testimony as to its relevance. The trial court properly refused to allow the video to be played to the jury.

## Conclusion

The trial court did not abuse its discretion in refusing to play Guyton's proffered video to the jury. We affirm his convictions for robbery and intimidation.

Kirsch, J., and Robb, J., concur.