Bobby **GILMAN**, Appellant (Defendant below),

v.

**STATE of Indiana,** Appellee (Plaintiff below).

No. 1-778A214.

Court of Appeals of Indiana, First District.

May 10, 1979.

Woodrow S. Nasser, Terre Haute, for appellant.

Theo. L. Sendak, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Defendant-appellant Bobby Gilman (Gilman) appeals his conviction for disorderly conduct (*Ind.Code* 35–27–2–1), aiming a weapon (IC 35–1–79–5), and aggravated assault and battery (IC 35–13–3–1).

The evidence most favorable to the State reveals that on Sunday afternoon, May 22, 1977, Gilman had been drinking and arguing with his wife in their home in Clinton, Indiana. At one point, Gilman went to the bedroom to retrieve a gun and admonished his wife that if she called the police he would shoot her and the police. Gilman then retired to the bedroom whereupon his wife called the police for assistance, relating that Gilman had a gun. When the police arrived, Gilman's wife let them in, said Gilman had threatened her life and was still in the bedroom with a gun. The officers went to the bedroom and asked Gilman to show his hands to ascertain whether or not he had a weapon. Gilman then brought a gun from beneath the blankets and started moving towards the officers, shouting at them to leave. Pleas to succumb met with deaf ears and the officers and Gilman's wife retreated outside the house.

Repeated attempts were made to persuade Gilman to surrender peacefully, but such attempts were vociferously rebuked. Other officers arrived and, in light of the situation and the fact that Gilman was at least chargeable with the felony of aiming a weapon, the officer in charge decided to use tear gas. A brick was thrown through the window with a response from the house of two gunshots. Tear gas was then thrown through the window. With no results forthcoming, more tear gas and a smoke bomb were thrown in the house, again meeting with three gunshots. After several attempts to locate Gilman were unavailing due to the dense smoke, the house was ventilated. Officer Jones then saw Gilman in the basement and told him to drop the gun and that he was under arrest. Since Gilman was aiming his gun at Jones, the latter chose to exit. Thereafter, Troopers Manley and Bosc entered the house with shotguns and stationed themselves at the bedroom entrance. They told Gilman to surrender and the response was a shot through the doorway and a threat that the next one would be between the eyes. Gilman than advanced towards the troopers with gun raised and shot Bosc, wounding him in the hand and shoulder. Both troopers returned the fire, wounding Gilman in the right arm. Gilman was then taken to the hospital, and the premises were secured by police until an investigative team could arrive.

At the outset, resolution of this appeal is based, as it must, on consideration of only those facts and inferences therefrom in favor of the verdict, and we will not weigh the evidence or judge the credibility of witnesses. *Thomas v. State*, (1976), 264 Ind.

581, 348 N.E.2d 4; *Zarnik v. State,* (1977) Ind.App., 361 N.E.2d 202. Of similar importance, the *burden* rests òn Gilman to establish that reversible error has occurred. *See Larkin v. State,* (1959) 240 Ind. 161, 162 N.E.2d 515; *Smith v. State,* (1961) 241 Ind. 598, 172 N.E.2d 673.

■ Gilman first alleges error in refusing to dismiss the information for disorderly conduct on the grounds that it was impermissibly vague. The information read:

Ed Lowry swears that Bobby Gilman . . . did then and there act in a disorderly manner so as to disturb the family of Margaret Gilman by threatening to kill said Margaret Gilman at her home . . ..

All of which is contrary to the form of the statute in such cases made and provided to-wit: Ind.Code § 35–27–2–1. . .

IC 35–27–2–1 provides:

Whoever shall act in a loud, boisterous or disorderly manner so as to disturb the peace and quiet of any neighborhood or family, by loud or unusual noise, or by tumultuous or offensive behavior, threatening, traducing, quarreling, challenging to fight or fighting, shall be deemed guilty of disorderly conduct . . ..

Gilman argues he threatened his wife, but that a wife is not a "family". This tortured argument deserves little mention. First, Gilman has not shown us how this "defect" has prejudiced or misled him in the preparation of a defense. *See Poindexter v. State,* (1978) Ind., 374 N.E.2d 509. Secondly, our Supreme Court stated in *Blackburn v. State,* (1973) 260 Ind. 5, 11, 291 N.E.2d 686, 690:

In this state, the offense charged in the indictment must be stated with such certainty that the accused, the court, and the jury may determine the crime for which conviction is sought. [Citations omitted.] The defendant must be given sufficient information to enable him to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime. [Citations omitted.] However, certain details may be omitted and a mo-

tion to quash properly denied unless the indictment is so uncertain and indefinite that the nature of the charge cannot be ascertained. [Citations omitted.]

We do not believe the information here is so indefinite and uncertain that the nature of the offense charged cannot be ascertained by Gilman.

■ Gilman next contends it was error for the court to permit over timely objection the wife to testify as to certain confidential communications. The failure of Gilman to direct us to any point in the record where confidential information was revealed is alone sufficient to hold that he has failed to establish error. *See Merry v. State,* (1975) Ind.App., 335 N.E.2d 249. Moreover, since the wife was the object of the criminal offense of disorderly conduct, the communications relating thereto would not be privileged. *See Shepherd v. State,* (1971) 257 Ind. 229, 277 N.E.2d 165.

■ Gilman next argues several constitutional violations by the police being on the premises after he told them to leave. First, the wife could lawfully consent to the officers entry in her own right. *Greer v. State,* (1970) 253 Ind. 609, 255 N.E.2d 919. Secondly, a consent or license removes what would otherwise be the status of a trespasser. *See, e. g., Bennett v. McIntire,* (1889) 121 Ind. 231, 23 N.E. 78. Therefore, the officers were lawfully on the premises due to the distress call of the wife and her subsequent consent to enter. The mere fact that Gilman told the officers to leave did not terminate their lawful presence since the officers were told that Gilman had threatened her and was armed. Most importantly, however, is that the officers conducted *no search or seizure* until after the incident was over. In the law of search and seizure, "search" connotes an uncovering or prying in order to discover that which is hidden. *Montague v. State,* (1977) Ind., 360 N.E.2d 181. No such search occurred here.

■ With respect to the failure to obtain a warrant *after* Gilman was taken to the hospital, we assume, without deciding, that the search was illegal. Gilman informs us

that the fruits consisted of several photographs of the residence, photographs of a gun and holster, shell casings and cartridges, and other miscellaneous items. The admission of illegally seized evidence does not automatically require a reversal. *See generally* Annot. 30 A.L.R.3d 128 (1970); *Mitchell v. State*, (1972) 259 Ind. 418, 287 N.E.2d 860. We are guided by now familiar standards as stated in *Chase v. Crisp*, 523 F.2d 595 (10th Cir. 1975), *cert. den.*, 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354, to the effect that if the weight of properly admitted evidence is overwhelming and, by comparison, the prejudicial effect of the inadmissible evidence is insignificant, the error may be deemed harmless. The inquiry is directed to the probable prejudicial impact of the inadmissible evidence on the minds of an average jury—if the evidence had been suppressed, yet a reviewing court has no reasonable doubt that the jury would have reached the same result, the error is harmless.

In the case at bar, we believe the error was harmless beyond a reasonable doubt. First, the evidence of guilt was overwhelmingly established by the eyewitness testimony of numerous police officers. In light of such testimony, the photographs and tangible items were no more than cumulative and, assuming such evidence had been excluded, we have no reasonable doubt that the average jury would reach the same result.

Gilman alleges error in permitting an officer to testify that the wife stated Gilman had threatened her. As in *Wills v. State*, (1974) 162 Ind.App. 159, 318 N.E.2d 385, such evidence was properly admitted to show why the officers were investigating, and not for the truth of the matter asserted.

Gilman next contends it was error to deny his motion to strike certain evidence at the close of the State's case-in-chief. A party is not permitted to idly await the admission of evidence and upon being dissatisfied with its unfavorable import move to strike the evidence. *Reid v.*

*State*, (1978) Ind., 372 N.E.2d 1149. Nevertheless, the merits of Gilman's contention is that the failure to place him formally under arrest and to give him *Miranda* warnings rendered inadmissible testimony by others of incriminating statements. Again, Gilman renders review impossible by his failure to direct us to any such incriminating statements in the record. He has therefore failed to carry the burden of establishing error. Moreover, we do not perceive from the record any interrogation by police officers which was directed at obtaining a confession. *See Johnson v. State*, (1978) Ind., 380 N.E.2d 1236. Thus, this contention is without merit.

Gilman also alleges various errors on the basis that the police were dilatory in failing to inform him that he was under arrest. First, Officer Jones did so inform Gilman and, secondly, an intent to arrest may be drawn from attendant circumstances and need not be expressly announced if it would be an idle ceremony to do so. *Pullins v. State*, (1970) 253 Ind. 644, 256 N.E.2d 553. This contention presents no error.

Gilman next contends the evidence was insufficient to support the conviction for aggravated assault and battery. Viewing only the evidence most favorable to the verdict, Gilman advanced towards Trooper Bosc and shot him in the finger and shoulder at close range.

> When the injury inflicted is of such a serious and violent nature that it could reasonably result in the loss of health, life or limb, a jury finding of great bodily harm will be sustained.

*Valentine v. State*, (1971) 257 Ind. 197, 202, 273 N.E.2d 543, 545. The nature of the injury inflicted on Bosc was not so trivial as to negate a conviction for aggravated assault and battery.

Gilman next alleges error in the refusal to instruct the jury that a wife may not consent to a search of jointly held property when the husband objects. This instruction was properly refused on several grounds. First, whether the wife could

consent to a search goes to the admissibility of evidence thereby obtained, and the admissibility of evidence is a question for the court, and not the jury. *See Juskulski v. State*, (1934) 206 Ind. 503, 190 N.E. 423. In this respect, the issue as to whether the evidence was illegally seized is analogous to whether the defendant was lawfully arrested; in the latter case, the legality of the arrest is a question for the court and does not bear on the guilt or innocence of the accused but rather only extends to the admissibility of evidence. *See Cheeks v. State*, (1973) 155 Ind.App. 277, 292 N.E.2d 852; *Martin v. State*, (1978) Ind.App., 374 N.E.2d 543. Hence, this was a question to be resolved by the court and not the trier of fact. Secondly, as noticed above, no actual search occurred on the wife's consent. Therefore, the instruction was properly refused as not applicable to the issues and the evidence before the jury. *See Harris v. State*, (1977) Ind., 366 N.E.2d 186.

■■■■ Gilman next alleges error in refusing to instruct the jury that they must find his wife constituted a "family" beyond a reasonable doubt. We believe this instruction was properly refused since it was adequately covered by the court's instruction to the effect that disorderly conduct consists of acting in a disorderly manner and disturbing a family by tumultuous behavior or threats. The refusal to give a tendered instruction will be reversed only if it was not adequately covered by other instructions and the substance of the instruction was required to be submitted to the jury. *Carroll v. State*, (1975) 263 Ind. 696, 338 N.E.2d 264. The purpose of instructions is to inform the jury of the law applicable to the facts, and the trial court is accorded some discretion in choosing which instructions are proper. *See Hackett v. State*, (1977) Ind., 360 N.E.2d 1000. We believe the trial court adequately instructed the jury on the elements of disorderly conduct and thus it did not abuse its discretion in refusing Gilman's tendered instruction.

■■ Gilman also contends that he was illegally seized and that therefore the jury erred in finding him guilty. This court is perplexed by Gilman's assertion. Gilman committed several felonies in the presence of police officers thereby amply supplying the requisite probable cause for an arrest without a warrant. *See J. E. G. v. C. J. E.*, (1977) Ind.App., 360 N.E.2d 1030.

For all the foregoing reasons, we affirm.

Affirmed.

LOWDERMILK, P. J., and LYBROOK, J., concur.