## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2015, 5:36 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Donald E.C. Leicht | Gregory F. Zoeller |
| Kokomo, Indiana | Attorney General of Indiana |
| | Jodi Kathryn Stein |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tianyve D. Stitts, | June 15, 2015 |
| *Appellant-Defendant*, | Court of Appeals Case No. 34A02-1410-CR-747 |
| v. | Appeal from the Howard Superior Court |
| State of Indiana, | The Honorable William C. Menges, Jr., Judge |
| *Appellee-Plaintiff*. | Cause No. 34D01-1402-FA-93 |

**Brown, Judge.**

[1] Tianyve D. Stitts appeals his convictions for three counts of possession of a controlled substance as class D felonies, escape as a class C felony, and possession of marijuana as a class A misdemeanor. Stitts raises two issues, which we revise and restate as:

    I.    Whether the trial court abused its discretion by admitting certain evidence; and

    II.    Whether the evidence is sufficient to support Stitts's conviction of escape as a class C felony.

We affirm.

## Facts and Procedural History

[2] In January of 2014, Police Officer Adam Martin arrested Lavonski Elliot. A few days before February 15, 2014, Officer Martin informed Kokomo Police Officer Aaron Tarrh that an arrest warrant had been issued for Elliot. Officer Martin further informed Officer Tarrh that Elliot would be driving a rental vehicle with a Montana license plate and informed Officer Tarrh to "be on . . . the look out" for Elliot driving that vehicle. Transcript at 133.

[3] At approximately 3:32 a.m. on February 15, 2014, Officer Tarrh observed a vehicle with Montana plates pass him. Officer Tarrh could not see the driver of the vehicle. Officer Tarrh followed the vehicle because it was "the only Montana-plated car that [he'd] ever seen in Kokomo." *Id.* at 134. Officer Tarrh continued to follow the vehicle until the vehicle pulled into a gas station and parked at the front of the store. Officer Tarrh also pulled into the gas station parking lot and parked his marked police vehicle at an angle several feet

behind the Montana-plated vehicle. Officer Tarrh did not activate his emergency lights or siren, and there was enough distance between the two vehicles to allow the Montana-plated vehicle to back out and leave. While Officer Tarrh was pulling in behind the Montana-plated vehicle, its passenger exited that vehicle and entered the store.

[4] Officer Tarrh then approached the driver's side of the vehicle on foot and Stitts, the driver, rolled down the window. Upon approaching, Officer Tarrh, who is trained in drug interdiction, detected the odor of marijuana. When asked to produce his driver's license, Stitts claimed Officer Tarrh was harassing him. Officer Jeff Packard, a "certified drug recognition expert," arrived at the gas station while Officer Tarrh continued to talk with Stitts, who remained in the vehicle. *Id.* at 83. Officer Packard approached the passenger side of the vehicle where he observed a bag of what he believed to be marijuana in plain view on the center console.

[5] Officer Tarrh asked Officer Packard to come around to the driver's side and when Officer Packard approached it, he also recognized the odor of marijuana emanating from the vehicle. Officer Tarrh asked Stitts several times to exit the vehicle. Stitts refused, but did exit the vehicle after Officer Tarrh threatened to arrest him for resisting law enforcement if he did not do so.

[6] Once Stitts exited the vehicle, Officer Tarrh commenced a search of his outer clothing, during which Stitts "was becoming more nervous" and "more fidgety" while "looking around . . . [in] a manner that was consistent with attempting to

locate a direction to flee." *Id.* at 37, 85. Due to Stitts's nervous behavior, the officers believed he was a flight risk, and Officer Tarrh placed him in handcuffs.[1] Continuing his search of Stitts, Officer Tarrh found and removed $2,186.00 from Stitts's coveralls and a cellophane wrapper that contained a variety of prescription pills, including four oxycodone, fourteen hydrocodone, and two carisoprodol. Stitts did not have a prescription for any of these medications. Upon removing the pills, Officer Tarrh placed them on the top of the vehicle. At this point, Stitts turned and ran from Officer Tarrh, who pursued him while Officer Packard remained at the scene.

[7]     Officer Tarrh caught up to Stitts after Stitts had slipped and fallen to the ground. Officer Tarrh then "was able to get on top of [Stitts] and keep him from getting back up again." *Id.* at 121. While Officer Tarrh was attempting to subdue him, Stitts "kept grabbing the inside of [Officer Tarrh's] leg" and "continued to thrash about and tried to roll underneath [Officer Tarrh] and tried to t[h]rust [Officer Tarrh] off of him." *Id.* Officer Tarrh told him to stop, but Stitts "continued to roll and thrash underneath [Officer Tarrh]." *Id.* Stitts stopped struggling after Officer James Nielson arrived and placed his knees on Stitts's legs. Officer Nielson transported Stitts to the jail, where he was searched.

---

[1] At trial, Officer Tarrh testified that "[Stitts] wasn't under arrest when I first placed him in handcuffs, not until I found the pills." Transcript at 135. When asked if he formally placed Stitts under arrest after finding the pills, Officer Tarrh answered, "No." *Id.* at 136.

[8]     On February 18, 2014, the State charged Stitts with: Count I, dealing in cocaine as a class A felony; Count II, possession of cocaine as a class C felony;[2] Count III, possession of a controlled substance as a class D felony (Hydrocodone); Count IV, possession of a controlled substance as a class D felony (Oxycodone); Count V, possession of a controlled substance as a class D felony (Carisoprodol); Count VI, escape as a class C felony; Count VII, possession of marijuana as a class A misdemeanor; and Count VIII, resisting law enforcement as a class A misdemeanor.

[9]     Stitts moved to suppress all of the evidence supporting the State's charges against him on the basis that it was obtained pursuant to an unlawful stop without reasonable suspicion in violation of the Fourth Amendment of the United States Constitution, and Article 1, Section 11 of the Indiana Constitution. The trial court held a suppression hearing and denied the motion based on specific findings that: (1) Officer Tarrh did not stop Stitts, but Stitts stopped himself at the gas station; (2) Officer Tarrh parked behind Stitts, but not so closely as to make it impossible for Stitts to leave; (3) Officer Tarrh did not turn on his emergency lights or siren; (4) Officer Tarrh gave no indication that Stitts was not free to leave; (5) Officer Tarrh approached the vehicle and detected an odor of marijuana; and, (6) once he had detected the odor of marijuana, Officer Tarrh had probable cause to lawfully detain Stitts. Stitts

---

[2] Officer Tarrh testified that twenty five plastic bags containing what appeared to be cocaine were handed to him by Officer Ramberger, who had escorted Stitts into the jail's changeover room.

requested that the court certify his motion to suppress for interlocutory appeal, but the court declined to do so.

[10]     At Stitts's jury trial, defense counsel did not object to the admission of the testimony regarding the discovery of the money and prescription drugs in Stitts's possession, the observation of marijuana on the center console, and the cocaine found in Stitts's possession at the jail. By individual and continuing objections, defense counsel did object to additional evidence offered about the money and prescription drugs found in Stitts's possession; his flight from the officers; the State chemist's testimony identifying the marijuana, the prescription medication, and the cocaine; and to the drug evidence itself. Defense counsel objected on the basis that the evidence was acquired after an illegal seizure in violation of Stitts's constitutional rights, which should render the evidence inadmissible. The court overruled defense counsel's objections. The jury returned verdicts finding Stitts guilty of all three counts of possession of a controlled substance as class D felonies (Counts III, IV, and V), escape as a class C felony (Count VI), possession of marijuana as a class A misdemeanor (Count VII), and resisting law enforcement as a class A misdemeanor (Count VIII). The jury was unable to reach a verdict on the cocaine related charges (Counts I and II), and the trial court declared a mistrial on those two charges. On October 15, 2014, the court sentenced Stitts to an aggregate executed sentence of twelve years.

## Discussion

### I.

The first issue is whether the trial court erred by admitting evidence obtained after Officer Tarrh parked behind Stitts's vehicle. In his brief, Stitts frames this issue as "[d]id the Trial Court improperly deny motions to suppress and objections to evidence." Appellant's Brief at 1. However, "[w]here a defendant does not perfect an interlocutory appeal from a trial court's ruling on a motion to suppress, but objects to the admission of the evidence at trial, the issue on appeal is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Danner v. State*, 931 N.E.2d 421, 426 (Ind. Ct. App. 2010), *trans. denied*; *see also Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). However, whether made through a pretrial motion to suppress or at trial by objection, "[o]ur review of rulings for the admissibility of evidence is essentially the same." *Rutledge v. State*, 28 N.E.3d 281, 287 (Ind. Ct. App. 2015). The admission or exclusion of evidence is within the sound discretion of the trial court, and review of those decisions is only for abuse of discretion. *Id.* In determining whether an abuse of discretion has occurred, a finding of such abuse will be made only "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). We will consider substantial and uncontested evidence favorable to the defendant. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). However, we will not reweigh the evidence and we defer to findings of fact made by the trial court

unless they are clearly erroneous. *Id*. When a defendant's appeal raises a question regarding the constitutionality of a search and seizure, the question presented is a question of law, which we review *de novo*. *Id.*

[12] Stitts argues that the encounter between Officer Tarrh and himself was a stop under the Fourth Amendment of the United States Constitution made without reasonable suspicion rendering the stop illegal and all evidence obtained as a result of the stop inadmissible. The State argues that Stitts has waived that claim by failing to object to most of the evidence and by failing to argue that the admission of the evidence was fundamental error. The State also contends that the encounter between Officer Tarrh and Stitts was initially consensual, which would not implicate the Fourth Amendment.

[13] To preserve the issue for appeal, an appellant must make a contemporaneous objection at the time the evidence is introduced at trial, regardless of whether a pretrial motion to suppress was made by the appellant. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*. Additionally, we have found the issue waived where a defendant objected to only a portion of the challenged evidence. *See Dickey v. State*, 999 N.E.2d 919, 921 (Ind. Ct. App. 2013); *Hutcherson v. State*, 966 N.E.2d 766, 770 (Ind. Ct. App. 2012), *trans. denied*. Here, Stitts did specifically object to evidence about his flight from the officers; the State chemist's testimony identifying the marijuana, the prescription medication, and the cocaine; and the drug evidence itself. As well, Stitts lodged a continuing objection to the offering of evidence "related to the case," which was granted by the trial court. Transcript at 103. However, prior to lodging his

continuing objection, Stitts did not object to the admission of certain testimony by Officer Packard regarding the discovery of the money and prescription drugs in his possession and the marijuana observed on the center console of the vehicle. Having not objected to this evidence at the time it was offered and having lodged a continuing objection only after the jury had heard significant evidence relating to the possession counts, we find that Stitts has waived the issue relating to the admissibility of the evidence to the extent he failed to object to Officer Packard's earlier testimony. *See Brown*, 929 N.E.2d at 207.

[14] Waiver notwithstanding, Stitts's argument that he was stopped in violation of the Fourth Amendment of the United States Constitution is unpersuasive.[3] The Fourth Amendment grants protection from unreasonable search and seizure by generally prohibiting searches conducted without a warrant supported by probable cause. *Clark*, 994 N.E.2d at 260. Not all encounters between law enforcement officers and citizens implicate the protections of the Fourth Amendment. *Id.* at 261. Consensual encounters in which a citizen voluntarily interacts with an officer do not compel Fourth Amendment analysis. *Id.* Nonconsensual encounters do compel a Fourth Amendment analysis and are typically divided into two levels of detention: full arrests lasting longer than a

---

[3] At trial, Stitts objected to pieces of evidence based upon his motion to suppress, which was based upon the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. In his brief, Stitts does not mention Article 1, Section 11 or provide an independent analysis of the Indiana Constitution. Failure to make a cogent argument under the Indiana Constitution constitutes waiver of the issue on appeal. *See Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002) (holding that because the defendant presented no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived).

short time, which require probable cause, and brief investigative stops, which require a lower standard of reasonable suspicion. *Id.*

[15] "Determining whether this was a consensual encounter or some level of detention 'turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business.'" *Id.* (quoting *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003)). "The test is objective—not whether the particular citizen actually felt free to leave, but 'whether the officer's words and actions would have conveyed that to a reasonable person.'" *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 1551 (1991)). Furthermore, *United States v. Mendenhall* "establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628, 111 S. Ct. at 1551 (citing 446 U.S. 544, 100 S. Ct. 1870 (1980)). Factors that might lead a reasonable person to conclude that he or she was not free to leave include the threatening presence of several officers, the display of a weapon by an officer, the physical touching of the person by an officer, or the use of language or tone of voice indicating that compliance with the officer's requests might be compelled. *Clark*, 994 N.E.2d at 261-262. However, the factors that go into determining whether a person would conclude that she is not free to leave "will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Michigan v. Chesternut*, 486 U.S. 567, 573,

108 S. Ct. 1975, 1979 (1988). In *Powell v. State,* 912 N.E.2d 853, 860-862 (Ind. Ct. App. 2009), we held that a police officer approaching a parked vehicle does not constitute an investigatory stop or seizure for the purposes of the Fourth Amendment. However, we have found it to be a seizure under the Fourth Amendment when a police officer blocks a vehicle in such a way that it is impossible for that vehicle to leave. *Stickle v. State*, 792 N.E.2d 51, 53 (Ind. Ct. App. 2003), *trans. denied*.

[16] Officer Packard testified that there was "room for [Stitts's vehicle] to back out . . . ." Transcript at 82. The court found that there was enough distance between Officer Tarrh's vehicle and Stitts's vehicle for Stitts to back out of his parking space and leave the gas station. The record also reveals that Officer Tarrh was alone, did not display a weapon, and did not physically touch Stitts. *See Clark*, 994 N.E.2d at 261-262. Additionally, Officer Tarrh did not turn on his emergency lights or siren when he pulled in behind Stitts. The trial court's specific factual findings indicate that Stitts was both free to leave and able to do so. The trial court's determination that a reasonable person in Stitts's position would have concluded that he was free to leave was not clearly erroneous. We conclude that the initial encounter between Officer Tarrh and Stitts was consensual.

[17] At the point that Officer Tarrh detected the odor of marijuana coming from the vehicle, he had probable cause to detain Stitts and conduct a search. *Clark*, 994 N.E.2d at 260 ("[T]he smell of burnt marijuana emanating from [a person's] car windows, to a trained officer, would provide such an officer with probable

cause sufficient to justify searching at least the open interior of the car."); *Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014) ("[T]he smell of raw marijuana on a person is sufficient to provide probable cause that the person possesses marijuana."), *trans. denied*. One of the exceptions to the Fourth Amendment's warrant requirement for searches is a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009). Accordingly, when Officer Tarrh smelled the odor of marijuana coming from Stitts's vehicle and when Officer Packard observed marijuana in plain view, the officers not only had probable cause to arrest Stitts, but also had authority to conduct a search incident to that arrest without a warrant. *See Bell*, 13 N.E.3d at 545-546; *see also Powell*, 912 N.E2d at 863 (discussing the "plain view" doctrine). Therefore, as the initial encounter between Stitts and Officer Tarrh was consensual and Stitts was further detained and searched after the officers had probable cause, we find that the trial court did not abuse its discretion in admitting the evidence obtained during the encounter between Stitts and the officers.

## II.

[18] The next issue is whether the evidence presented by the State was sufficient to support Stitts's conviction of escape as a class C felony.[4] Stitts argues that a

---

[4] In his brief, Stitts frames this issue as "[w]as the Defendant improperly convicted of Escape and Resisting?" Appellant's Brief at 1. However, in his summary of the argument regarding this issue, he states only that "[t]here is no factual basis for Stitts having been convicted of escape." Appellant's Brief at 6. In the argument section of his brief, Stitts addresses the resisting conviction only on the basis that the encounter between himself and Officer Tarrh was an unconstitutional stop and the evidence of his resisting should have been suppressed. As we discussed in Part I, the encounter was not an unconstitutional stop and the evidence of Stitts's flight and subsequent resistance was properly admitted at trial. For these reasons, we address only the sufficiency of the evidence supporting Stitts's conviction for escape as a class C felony.

necessary element of the crime was not proven because he was not under arrest at the time that he fled from the gas station. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Gray v. State*, 903 N.E.2d 940, 943 (Ind. 2009). Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value and reasonable inferences drawn from that evidence upon which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[19] The offense of escape as a class C felony is governed by Ind. Code § 35-44.1-3-4, which at the time of the offense provided that "[a] person . . . who intentionally flees from lawful detention commits escape, a Class C felony."[5] At the time of the offense, Ind. Code § 35-31.5-2-186 defined "lawful detention" to mean "arrest . . . or . . . any other detention for law enforcement purposes."[6] Thus, to convict Stitts of escape as a class C felony, the State needed to prove that Stitts intentionally fled from lawful detention.

[20] The Indiana Supreme Court has held that an arrest occurs not only when a person is formally placed under arrest, but also when a police officer interrupts the freedom of the accused person and restricts his liberty of movement. *Roberts v. State*, 599 N.E.2d 595, 598 (Ind. 1992). In addition, an intent to arrest may

---

[5] Subsequently amended by Pub. L. No. 158-2013, § 511 (eff. July, 1 2014).

[6] Subsequently amended by Pub. L. No. 170-2014, § 9 (eff. July 1, 2014).

be drawn from attendant circumstances and need not be expressly announced if it would be idle ceremony to do so. *Gilman v. State*, 180 Ind. App. 483, 488, 389 N.E.2d 327, 331 (1979). Determining whether a person is under detention requires an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business. *Finger*, 799 N.E.2d at 532 (citing *Hodari D.,* 499 U.S. at 628, 111 S. Ct. at 1547). In this case, Stitts had been ordered to exit his vehicle under threat of being arrested for resisting a law enforcement official, had been placed into handcuffs, was being searched, and large quantities of currency and a cellophane wrapper containing prescription medications for which he had no prescription had been found on his person before he ran from the gas station. For these reasons, we conclude that a reasonable inference from the evidence and attendant circumstances is that Stitts was lawfully detained for purposes of Ind. Code § 35-44.1-3-4. Because Stitts was lawfully detained when he ran from the officers, we conclude that the jury could have found Stitts guilty beyond a reasonable doubt of escape as a class C felony.

## Conclusion

For the foregoing reasons, we affirm Stitts's convictions.

Affirmed.

Crone, J., and Pyle, J., concur.