ATTORNEY FOR APPELLANT
Jeffrey D. Stonebraker
Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana



## In the
## Indiana Supreme Court

No. 10S01-0808-CR-476

TONY R. GRAY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Clark County Circuit Court, No. 10C01-0702-FB-082
The Honorable Daniel F. Donahue, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 10A01-0708-CR-356

**March 31, 2009**

**Boehm, Justice.**

Tony Gray was found guilty by a jury of robbing two fast-food restaurants while armed with a deadly weapon. We find the evidence sufficient to sustain a finding Gray was armed during the first robbery, but insufficient to sustain a finding Gray was armed during the second.

### Facts and Procedural History

On the evening of February 14, 2007, Gray entered a Clarksville Arby's fast-food restaurant and, keeping his right hand in his jacket pocket, ordered employee Stacy Dodge to get be-

hind the counter. Dodge saw "what looked like could have been a weapon" in Gray's jacket and "figured it was a gun." Gray took Dodge to the back of the restaurant and instructed the other employees to lie down on the floor. Gray ordered manager Stacey Clark to open the restaurant's safe and cash registers. Clark testified that Gray "had something in his right pocket. I saw a black handle. . . . [H]e told me that to stay calm and no one would get hurt . . . . I assumed there was a weapon in his pocket. I assumed it was a gun. I have no idea if it was or not, but I was really scared for my life and my employees' lives." Gray took over $1,000 and fled through a side door.

Four days later, Gray entered a Clarksville Long John Silver's restaurant, grabbed manager Kathleen Doss by the arm, and told her that he was robbing the restaurant. According to Doss, Gray "had something in his pocket, you know, I thought it was a gun and it was in his pocket and he, you know, grabbed my arm and put it to my, you know, like, like right by my, he was standing like right behind me." Ella Henley, a customer sitting in a booth, testified that Gray "had something in his pocket, which I thought was a gun . . . . I was afraid that he might just, you know, reflex might pull the trigger and might shoot her." Gray proceeded with Doss to the back of the restaurant where he ordered the employees to stand against a wall and instructed general manager Thomas Jones to remove the cash from the restaurant's safe and registers. When Jones tried stalling to permit another employee to call the police, Gray told Jones, "You act like you want to die today," and "you're going to end up getting yourself shot."

An employee called 911 while Gray and Jones were in the front of the restaurant at the cash registers. Henley had left the restaurant unnoticed and also called the police shortly after the employee's call. Gray took approximately $2,600 and left through the back door as Clarksville police officer Carl Durbin responded to the calls and approached the Long John Silver's. Durbin saw Gray running from the restaurant toward the back of a neighboring Firestone Auto Care Center. Several people exited the Long John Silver's and pointed at Gray. Durbin turned into the driveway along the side of the Firestone store. Gray had started his car and was driving from the rear of the Firestone store toward the street. Durbin swung behind Gray's car and activated his lights, and Gray immediately stopped his car, got out, and put his hands in the air. Durbin placed Gray under arrest and handcuffed him. Durbin estimated that ten to twelve seconds elapsed between the time he saw Gray running from Long John Silver's and the time he

stopped Gray in his car. He estimated that the Firestone was roughly 200 feet away from the Long John Silver's.

Durbin was soon joined by Captain Dale Hennessey, who assisted in arresting Gray and inventoried Gray's car. Hennessey found the money from Long John Silver's in the front seat. No firearm was found on Gray's person, inside his automobile, or in the vicinity. An electric shaver was found in Gray's right jacket pocket.

Gray was convicted by a jury of two counts of armed robbery, Class B felonies, and three counts of armed criminal confinement, also Class B felonies, for confinement of three of the restaurant employees. Gray was also convicted as a habitual offender and sentenced to an aggregate term of seventy years imprisonment.

Gray appealed, arguing that there was insufficient evidence that he was armed with a deadly weapon in the course of these offenses.[1] The Court of Appeals affirmed, finding sufficient evidence that Gray had a gun in his pocket in each incident. Gray v. State, No. 10A01-0708-CR-356, slip op. at 15–18 (Ind. Ct. App. June 6, 2008). Judge Barnes dissented, expressing his view that the evidence Gray had been armed was premised solely on the witnesses' beliefs and fears—as opposed to actual proof that Gray had a gun at the time of the offenses. Id. at 22. Judge Barnes would have reduced Gray's robbery convictions to Class C felonies and his criminal confinement convictions to Class D felonies. Id. at 25. Gray petitioned for transfer, which this Court has granted.

**Standard of Review**

Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is proba-

---

[1] Gray raised four other arguments on appeal: that the trial court erred by denying Gray's motion to sever the Arby's counts from the Long John Silver's counts, Gray's motion to suppress statements he made to law enforcement, and Gray's motion to suppress identification evidence, and that Gray's robbery and criminal confinement convictions violated the double jeopardy provisions of the Indiana Constitution. The Court of Appeals resolved all four claims in favor of the State. Gray v. State, No. 10A01-0708-CR-356, slip op. at 6–9, 9–11, 11–15, 19–20 (Ind. Ct. App. June 6, 2008). We summarily affirm the decision of the Court of Appeals as to all four issues. Ind. Appellate Rule 58(A)(2).

tive evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  O'Connell v. State, 742 N.E.2d 943, 949 (Ind. 2001).

## Sufficiency of the Evidence

Robbery is a Class C felony but "is a Class B felony if it is committed while armed with a deadly weapon."  Ind. Code § 35-42-5-1 (2004).  Similarly, criminal confinement is a Class D felony but is a Class B felony if it is "committed while armed with a deadly weapon."  Id. § 35-42-3-3(b)(2)(A).  "Deadly weapon" is defined to include a number of things, see id. § 35-41-1-8, but in this case the charging instrument alleged that Gray was armed with "a gun" when he committed the robberies.  Therefore, in order to elevate Gray's convictions to Class B felonies, the State was required to prove that Gray committed the offenses using a firearm.  See Mitchem v. State, 685 N.E.2d 671, 677–78 (Ind. 1997).

A conviction for armed robbery may be sustained even if the deadly weapon was not revealed during the robbery.  Schumpert v. State, 603 N.E.2d 1359, 1364 (Ind. Ct. App. 1992).  Nor is it necessary that the weapon be admitted into evidence at trial.  Brown v. State, 266 Ind. 82, 86, 360 N.E.2d 830, 833 (1977).  It is, however, necessary that there be evidence to support the finding that the defendant in fact was "armed with a deadly weapon," in this case a "gun."  In this respect, Indiana's statute requires more than its counterparts in some other states which elevate robbery based not only on the fact of use of a weapon, but also, for example, on the perception of the victim that the defendant was armed even if there was in fact no weapon.[2]

As Judge Barnes pointed out, Class B felony armed robbery typically involves "an actual heightened risk of harm to the victim."  Gray, at 23.  Academic commentary has also concluded

---

[2] See N.H. Rev. Stat. Ann. § 636:1 (LexisNexis 2007) (robbery conviction is enhanced if defendant "[w]as actually armed with a deadly weapon" or "[r]easonably appeared to the victim to be armed with a deadly weapon"); Wis. Stat. Ann. § 943.32 (West 2005) (robbery conviction is enhanced if committed "by use or threat of use of a dangerous weapon . . . or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon"); S.C. Code Ann. § 16-11-330 (2003) (anyone who "commits robbery while armed with a pistol . . . or other deadly weapon, or while alleging, either by action or words, he was armed while using a representation of a deadly weapon or any object which a person present during the commission of the robbery reasonably believed to be a deadly weapon" is guilty of armed robbery); Okla. Stat. Ann. tit. 21, § 801 (West 2002) (anyone who, "with the use of any firearms or any other dangerous weapons, whether the firearm is loaded or not, or who uses a blank or imitation firearm capable of raising in the mind of the one threatened with such device a fear that it is a real firearm" is guilty of armed robbery).

that "intimidation by some means is a necessary ingredient of simple robbery without violence; something additional in the way of dangerousness is needed for aggravated robbery . . . ." 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(f), at 195 (2d ed. 2003). "[T]he greater punishment is awarded for armed robbery so as to deter the dangerous person who is actually capable of inflicting death or serious bodily." Id. at 195 n.110. Under statutes such as Indiana's, an armed robbery conviction requires proof that the perpetrator actually—rather than apparently—possessed a deadly weapon. As the Massachusetts Supreme Judicial Court has explained in interpreting its statute which also requires that the defendant be armed:[3]

> The crime of armed robbery, an aggravated form of robbery, is based in part on the potential for injury that arises from the possession of a dangerous weapon. When there is no such weapon, the potential is absent. The victim's apprehension is, of course, likely to be the same whether the defendant had a gun or only said he had a gun, but did not. The nature of any threats and a victim's apprehension may be relevant factors in sentencing a defendant on his conviction of unarmed robbery, but, in the absence of evidence warranting an inference beyond a reasonable doubt that a defendant, in fact, had some instrumentality in his possession, there can be no conviction of robbery while "armed with a dangerous weapon."

Commonwealth v. Howard, 436 N.E.2d 1211, 1213 (Mass. 1982). Indiana is more expansive than Massachusetts, however, because our statute has broadly defined "deadly weapon" to include unloaded firearms, and convictions for armed robberies with blank or plugged guns have been upheld. Barber v. State, 418 N.E.2d 563, 568 (Ind. Ct. App. 1981); Rogers v. State, 537 N.E.2d 481, 484–85 (Ind. 1989). There is therefore no requirement under Indiana law that the victim be actually in danger of being shot. Presumably this reflects the view that use of a firearm as a club is possible, and the mere display of a firearm can provoke reaction in others that risk severe injury either by panic or attempted retaliation. Despite the broadened definition of "deadly weapon," Indiana's statute, like Massachusetts's, requires that the person actually possess the weapon at the time of the crime. And in Gray's case the information required the weapon to be a "gun."

We turn now to the question whether the evidence is sufficient to establish that Gray possessed a gun in either or both of these incidents. Stacey Dodge testified with respect to the ob-

---

[3] The Massachusetts armed robbery statute provides that "[w]hoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be" subject to an enhanced robbery conviction and sentence. Mass. Gen. Laws Ann. ch. 265, § 17 (West 2008).

ject in Gray's pocket in the Arby's robbery that she "figured it was gun," "thought it was a gun," and saw "something that could have been a gun." But she also testified that she never saw a firearm. Stacey Clark saw a black handle in Gray's pocket and "assumed it was a gun." She said that Gray instructed her to stay calm and "no one would get hurt." But Clark also testified that she did not see a firearm and "did not know if [Gray] had a gun." In short, none of the Arby's witnesses testified that they saw a gun in Gray's jacket. Cf. Harvey v. State, 542 N.E.2d 198, 200 (Ind. 1989) (evidence was sufficient to sustain armed robbery conviction where, among other things, victim testified, "I saw it was a gun.").

The Long John Silver's witnesses testified similarly to the Arby's witnesses. Ella Henley never saw a gun but thought Gray had one in his pocket. Henley "was afraid that he might just, you know, reflex might pull the trigger . . . ." Kathleen Doss testified that Gray "made it to look like" he had a firearm. And Thomas Jones testified that he never saw a firearm during the robbery but that Gray "made us believe that [he] had a gun."

The defendant's statement or implication that he had a weapon is itself evidence that he was in fact armed. White v. State, 455 N.E.2d 329, 332 (Ind. 1983); see also Munsey v. State, 421 N.E.2d 1115, 1117 (Ind. 1981) (finding sufficient evidence defendant was armed where victim did not see weapon but felt sharp instrument on her neck and defendant told victim "if [she] moved they'd cut [her] head off"); Lyda v. State, 272 Ind. 15, 17, 395 N.E.2d 776, 778 (1979) (defendant, inter alia, told victim he had a gun); Owens v. State, 497 N.E.2d 230, 231–32 (Ind. 1986) (defendant, inter alia, gave note to victim stating he had a gun).

Although no one testified to seeing a gun, in both cases Gray communicated that he was armed. Gray's statement at Long John Silver's that Jones would end up getting himself shot is substantive, if not conclusive, evidence that Gray had a gun in his pocket when he robbed Long John Silver's.[4] Gray's conduct and statements in the Arby's robbery were less clear but nonethe-

---

[4] On this note, we should briefly revisit the Arby's robbery to clarify one point. Gray, who told the court he was within one semester of completing his criminal justice degree, represented himself at trial. The transcript is somewhat confusing, and at some points reads as if authored by Joseph Heller. At trial Gray asked Arby's employee Stacey Clark about testimony she had provided in a prior deposition:

[Gray:]   Ma'am, did the suspect ever tell you verbally he had a gun?

[Clark:]   No, you did not say you had a gun.

        . . . .

6

less permitted the jury to infer that Gray had communicated to the victim that he had a gun. His keeping his hand in his pocket and statements that "no one would get hurt" if the employees cooperated clearly implied that he could and would injure those who resisted, and the cooperation of the employees who outnumbered Gray four-to-one is evidence that they believed he was armed. Their belief is not sufficient to establish armed robbery, but it is evidence that Gray communicated that he was armed.

Without more, Gray's statements and conduct at both stores would be sufficient to permit the jury to find that he was in fact armed at the time of both offenses. The chain of events following Gray's flight from the Long John Silver's demonstrates otherwise as to that robbery. Gray was arrested almost immediately after leaving the Long John Silver's, and police found no firearm on Gray's person, in his car, or at the scene of the crime. Under these circumstances, it is impossible to conclude beyond a reasonable doubt that Gray was in fact armed at the time of the Long John Silver's robbery. Compare Commonwealth v. Delgado, 326 N.E.2d 716, 717–19 (Mass. 1975) (defendant's statements are sufficient to prove that he was armed) with Commonwealth v. Howard, 436 N.E.2d 1211, 1211–13 (Mass. 1982) (despite defendant's threats to shoot victim in street robbery, evidence was insufficient when defendant was arrested immediately without opportunity to dispose of a weapon and none was found).

In sum, Gray was spotted by Officer Durbin as he was exiting the Long John Silver's, and was arrested approximately ten to twelve seconds later only 200 feet away from the restaurant. Gray and his automobile were searched at the time of his arrest, and money was found but no weapon. No gun was found in the surrounding area, but an electric shaver in the pocket in

---

| [Gray:] | I think starting on page, starting on line 9, did you say, "I don't know if he said if he had a gun. But he said no one will get shot. That no one will get hurt", is that true, ma'am? |
|---|---|
| [Clark:] | And it says something to that, something like that. . . . |
| | . . . . |
| | . . . [I]t says in here, from straight from line 9, I know if he said but he said no one would get shot. Something like that. |
| [Gray:] | Right. |
| [Clark:] | That no one would get hurt, something like that. That's what I said. |

Clark's deposition was not entered into evidence and it is unclear whether her live testimony confirmed either that Gray said he was armed or that he was in fact armed.

7

which restaurant employees assumed Gray was concealing a weapon. We believe that the limited timeframe, the proximity of the arrest, the police's failure to recover a gun in the area, and the discovery of the shaver in Gray's jacket together preclude any finding beyond a reasonable doubt that Gray was in fact armed with a gun at Long John Silver's. We agree with Judge Barnes that "all of the evidence and all of the reasonable inferences therefrom lead to just one conclusion," "namely that Gray used an electric shaver, not a gun, to rob the Long John Silver's." Gray, at 24. We thus hold the evidence insufficient as a matter of law to sustain Gray's enhanced convictions on the counts charging robbery and confinement at Long John Silver's.

**Conclusion**

This cause is remanded to the trial court with instructions to reduce Gray's convictions on the Long John Silver's crimes (Counts I and II) to Class C felony robbery and Class D felony criminal confinement. In all other respects, the judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan, Rucker, JJ., concur.