## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2017, 8:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jared M. Thomas<br>Evansville, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| | Christina D. Pace<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jvon K. Sydnor,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 30, 2017<br><br>Court of Appeals Case No.<br>65A04-1704-CR-738<br><br>Appeal from the Posey Superior Court.<br>The Honorable S. Brent Almon, Judge.<br>Trial Court Cause No.<br>65D01-1609-F3-506 |

**Barteau, Senior Judge**

## Statement of the Case

[1] Jvon Sydnor appeals his conviction by jury of armed robbery, as a Level 3 felony,[1] contending that the State presented insufficient evidence to support his conviction and his sentence is inappropriate. We affirm.

## Issues

[2] Sydnor raises the following, restated, issues for our review:

> I. Whether the State presented sufficient evidence to support his conviction; and
>
> II. Whether the trial court abused its discretion in sentencing him.

## Facts and Procedural History

[3] The facts most favorable to the judgment reveal that Meagan Gumbel and Brandon Stewart were dating but did not live together. Gumbel lived in Evansville with her two children. On September 21, 2016, Gumbel picked Stewart up from a house located in Mount Vernon, Indiana. Gumbel was driving a dark blue, four-door 2012 Dodge Avenger with dark tinted windows. Gumbel had her two children with her in the vehicle.

[4] Gumbel and Stewart planned to drive to Evansville. However, Gumbel first drove around town because Sydnor, a friend of Stewart's, also wanted a ride to

---

[1] Ind. Code § 35-42-5-1(1) (2014).

Evansville and was supposed to call Gumbel and Stewart to coordinate the ride. Once Sydnor contacted them, Gumbel and Stewart picked him up at an apartment complex in Mount Vernon. Stewart moved to the backseat of the vehicle, behind Gumbel, to assist Gumbel's children. Sydnor sat in the front seat.

[5] When Sydnor entered the vehicle, he told Gumbel to drive to a liquor store located on 3rd Street in Mount Vernon. As they approached the liquor store, Sydnor told Gumbel to drive around the block because "[t]here's too many people." Tr. Vol. I p. 90. Gumbel did so and then parked her vehicle on the street that ran along the side of the liquor store. Sydnor exited the vehicle and entered the store.

[6] Angela Ricketts was working at the liquor store on September 21, 2016. Shortly before 4:00 p.m., she saw a man, later identified as Sydnor, enter the store with his shirt pulled over his face and a hat or hood covering his head. Sydnor motioned with his head for Ricketts to approach the front counter and when Ricketts asked, "[w]hat can I get for you," Sydnor replied, "[t]he money." *Id*. at 51. Thinking that he was joking, Ricketts said, "No, I'm not giving you the money." *Id*. Sydnor then pulled a gun out of his pocket, pointed it at Ricketts' face and said, "I want the money," and "[d]on't make me kill you." *Id*. at 51, 52. Ricketts placed the money from the cash register into a brown paper bag that Sydnor handed to her. Sydnor grabbed the bag and exited the store. Video of the robbery was captured by the liquor store's surveillance system.

While Sydnor was inside the store, Crystal Soehl was walking to work nearby. She heard Stewart call to her from Gumbel's vehicle. When Soehl approached the vehicle, Stewart said, "Hey, don't go in [the liquor store]" because "[s]ome [sh**] is going down." *Id*. at 169. Soehl said "[o]kay." *Id*. at 170. Before she walked away, she saw Sydnor walking toward the vehicle with a bag in one hand. Sydnor was holding up his pants with his other hand and held a gun in the hand that he used to hold up his pants.

Sydnor entered Gumbel's vehicle and yelled, "Go, [g]o, [g]o." *Id*. at 93. Gumbel saw the brown paper bag in his hand. Sydnor told Gumbel that he robbed the liquor store and that the clerk thought the robbery was a joke until he pulled out his gun and pointed it at her.

After leaving the liquor store, Gumbel, Stewart, and Sydnor stopped at a local gas station because Gumbel's vehicle was low on fuel. Sydnor was angry because he wanted Gumbel to stop for gas outside of Mount Vernon. Gumbel went inside the gas station to use the restroom and pay for the gas. She returned to her vehicle and began to fill the gas tank. She saw Sydnor throwing clothing into a trashcan next to the gas pump.

Once the gas tank was filled, Gumbel, Stewart, and Sydnor left Mount Vernon and drove to Evansville. When they reached Evansville, Gumbel and Stewart dropped off Sydnor at a residence. The two then drove to Stewart's mother's house where they searched Gumbel's vehicle. Stewart found a gun under the driver's seat, the same one that Gumbel had seen earlier that day on Sydnor's

lap when he was seated in her vehicle after the robbery took place. Stewart contacted Sydnor, and Gumbel and Stewart met Sydnor and returned the gun to him. Gumbel eventually drove both Sydnor and Stewart to an apartment in Evansville and left them there.

[11] Gumbel returned to the home in Evansville that she shared with her friend, Bianca Boarman. Earlier, Boarman had sent a text message to Gumbel, asking Gumbel what time she left Mount Vernon. Boarman had heard a television news report that a blue car with tinted windows was involved in an armed robbery. Gumbel told Boarman about the robbery, and Boarman contacted her cousin, an Indiana State Trooper. The state trooper came to the house, and Gumbel provided him with a statement. He then took Gumbel to the Mount Vernon Police Department to meet with a detective. Gumbel provided the detective with a recorded statement regarding the robbery.

[12] Sydnor was arrested and was charged with two counts of armed robbery, as Level 3 felonies. One count alleged that he used or threatened the use of force on the victim, and the other count alleged that he put the victim in fear. The handgun used during the robbery was not recovered by the police.

[13] Following a two-day jury trial, Sydnor was found guilty as charged. The trial court initially sentenced him to nine years' imprisonment for each count, to be served concurrently. The trial court later amended its judgment, merged the two robbery convictions, and sentenced Sydnor to nine years executed in the Indiana Department of Correction. Sydnor appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[14] Sydnor first argues the evidence presented at trial was insufficient to support his conviction for Level 3 felony robbery. Specifically, he contends that the State failed to prove that he was armed with a deadly weapon at the time the robbery was committed.

[15] In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id.* We affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[16] To convict Sydnor of Level 3 felony robbery, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally took property from Ricketts by using force or the threat of force while armed with a deadly weapon. *See* Ind. Code § 35-42-5-1(1) (2014). A "deadly weapon" includes, in part, "[a] loaded or unloaded firearm." Ind. Code § 35-31.5-2-86(a)(1) (2012). To prove that a weapon was used in the commission of a crime, it is not necessary to introduce the weapon into evidence at trial. *Gray v. State*, 903 N.E.2d 940, 943 (Ind. 2009). However, there must be some proof that the defendant was actually armed with a deadly weapon at the time of the crime. *Id.* at 943-44. A victim's testimony that he or she saw the defendant use

what was believed or "figured" to be a gun is, by itself, sufficient proof of the use of a deadly weapon. *Harvey v. State*, 542 N.E.2d 198, 200-01 (Ind. 1989).

[17] Ricketts, the victim of the robbery, testified that Sydnor pulled a gun from his pocket and pointed it at her face. Video of the robbery, captured by the liquor store's surveillance system, showed Sydnor pointing a firearm at Ricketts. The detective assigned to the case testified that he had specialized training in firearms and handguns and that the object he saw Sydnor holding in the robbery video was a handgun similar to the one the detective carried. Gumbel, the driver of the vehicle in which Sydnor rode to and from the robbery, presented testimony that she saw a gun on Sydnor's lap while he was seated in the front seat of her vehicle after the robbery occurred. Gumbel testified that Sydnor told her that during the robbery, he pulled out the gun and pointed it at Ricketts.

[18] Ample evidence was presented to establish that Sydnor was armed with a deadly weapon when he robbed Ricketts. Sydnor's argument to the contrary is simply a request to reweigh the evidence and the credibility of the witnesses, which our court will not do. We conclude that the State presented sufficient evidence from which a reasonable factfinder could conclude that Sydnor was armed with a deadly weapon when he robbed Ricketts.

## II. Inappropriateness of Sentence

[19] Sydnor next argues that his nine-year sentence is inappropriate in light of the nature of the offense and his character. We may revise a sentence if it is

"inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Sydnor bears the burden of persuading us that his sentence is inappropriate. *See Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (burden is on defendant to persuade us his sentence is inappropriate).

[20] Sydnor, however, fails to present a cogent argument that the nature of his offense or his character makes his sentence inappropriate. His Rule 7(B) argument focuses only on the trial court's failure to consider the following as mitigating factors: his family's testimony at sentencing regarding his upbringing, his crime was a result of circumstances unlikely to recur, he likely would respond affirmatively to short-term imprisonment, he had not been ordered to serve executed time in the Indiana Department of Correction for any of his previous convictions, and imprisonment would be an undue hardship on his children. As such, the issue we will address on appeal is whether the trial court abused its discretion at sentencing when it failed to consider the above-listed factors as mitigating.

[21] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). A trial court may impose any sentence authorized by statute, and so long as a sentence falls within the statutory range, it may only be reviewed for an abuse of discretion. *Id*. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *Id*.

[22] In making a sentencing determination, the trial court may consider whether there are any aggravating or mitigating circumstances to merit a sentence enhancement or reduction. Ind. Code § 35-38-1-7.1(a)-(b) (2015). However, "[i]f the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist." *Anglemyer*, 868 N.E.2d at 493 (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)). Nor is the sentencing court required to place the same value on a mitigating circumstance as does the defendant. *Beason v. State*, 690 N.E.2d 277, 283-84 (Ind. 1998). A claim that the trial court failed to find a mitigating circumstance requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

[23] Sydnor argues the trial court "should have found" the following as mitigating factors: his family's testimony at sentencing regarding his childhood and his character, his crime was a result of circumstances unlikely to recur, he likely would respond affirmatively to short-term imprisonment, and he had not been ordered to serve executed time in the Indiana Department of Correction for any of his previous convictions. Appellant's Br. p. 19. Sydnor also asserts that the trial court did not "give any weight whatsoever to the mitigating factor that imprisonment would result in an undue hardship" on his children. *Id.* The record, however, indicates that the trial court did consider the proposed mitigators but gave them little weight or rejected them. The court specifically stated:

> The Court notes the . . . defendant's overall risk assessment score puts the defendant in the high risk [sic] category to reoffend under supervision. . . . The Court does take into consideration that his mother apparently exited his life at age six. I don't believe that you have had the – necessarily the best, easiest childhood, but not necessarily the worst by any means either.
>
> . . .
>
> The Court also takes into consideration the fact that you have not had – apparently have not – you've been in jail and you were ordered to serve the balance of one year of the remainder of the sentence in the prior felony robbery, but the Court takes into consideration that you have not been previously incarcerated at the Indiana Department of Corrections [sic] apparently.

Sentencing Tr. pp. 48-49. The trial court also considered Sydnor's prior criminal record which included convictions for resisting law enforcement and Level 5 felony robbery; his probation revocations; that he committed the instant offenses while on probation; and that he was not a "good candidate for supervision." *Id.* at 51. Regarding undue hardship, Sydnor did not provide a special circumstance that would justify a finding that imprisonment would result in an undue hardship on his children. As such, the trial court was not required to find that imprisonment would result in undue hardship. *See Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999) ("Many persons convicted of serious crimes have one or more children [so], absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship.")

Sydnor has not established that the trial court overlooked any significant mitigators that were clearly supported by the record. The trial court did not abuse its discretion when it sentenced Sydnor.

## Conclusion

For the reasons stated above, we find that sufficient evidence was presented to support Sydnor's conviction for Level 3 felony robbery, and the trial court did not abuse its discretion at sentencing.

Affirmed.

Bailey, J., and Robb, J., concur.