## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 12 2018, 6:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.H.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 12, 2018

Court of Appeals Case No.
49A02-1707-JV-1542

Appeal from the Marion County Superior Court

The Honorable Marilyn Moores, Judge
The Honorable Gary Chavers, Magistrate

Trial Court Cause No.
49D09-1702-JD-318

**Barnes, Judge.**

# Case Summary

R.H. appeals his juvenile delinquency adjudications for what would be Level 3 felony armed robbery, Level 6 felony pointing a firearm, Class A misdemeanor dangerous possession of a firearm, and Class A misdemeanor resisting law enforcement if committed by an adult. We affirm in part and reverse in part.

# Issues

The issues before us are:

    I.    whether there is sufficient evidence to support R.H.'s delinquency adjudications; and

    II.    whether the adjudications for both armed robbery and pointing a firearm violate double jeopardy principles.

# Facts

On the evening of February 25, 2017, Porter Tapps drove to his girlfriend's apartment in Indianapolis in his minivan. As Tapps got out of the minivan and was walking to the apartment, three young men appeared from behind some bushes, pointing guns at him. A young man in a blue hoodie demanded that Tapps give him the keys to the minivan. This young man and the second young man ran to the minivan while the third, who was wearing a light gray or white hoodie, continued pointing a gun at him and told him not to move. However, Tapps had not given the other two young men the keys to the minivan, and they came back and demanded the correct keys. The young man in the gray or white hoodie then told Tapps to give him his money. Tapps

recalled giving him approximately sixty dollars: a fifty-dollar bill, a five-dollar bill, and four or five ones. The three individuals then drove away in Tapps's minivan.

[4] Tapps called 911 and reported the incident. A few hours later, Officer Chad Gibson of the Indianapolis Metropolitan Police Department saw Tapps's minivan being driven within two-and-a-half miles of where it had been stolen. Before making a stop, Officer Gibson called for backup. Officer Scott Baker, who had a K-9 with him, initiated a stop of the minivan, with Officer Gibson right behind; both officers had their emergency lights on. When the minivan stopped, three young men got out of it and started running. Two of them were wearing dark hoodie sweatshirts, and the third was wearing a gray hoodie. Officer Baker commanded them to stop, but they continued running. Officer Baker then deployed his K-9, who caught one of the men wearing a dark hoodie and who was the driver of the minivan. Officer Baker also eventually captured both of the other young men. The person in the gray hoodie, who was about a block-and-a-half away from the minivan when captured, was R.H. A search incident to arrest revealed that he had approximately sixty dollars in cash in his possession: a fifty-dollar bill, a five-dollar bill, and several ones. He also had several rounds of .380-caliber ammunition in his pocket, but no .380-caliber weapon ever was recovered. A nine-millimeter handgun was found in the minivan.

[5] Detective James Hurt prepared suspect photo arrays for Tapps. Tapps picked R.H. out of an array as the young man who was wearing a white or gray hoodie

and who had taken his money. R.H. was wearing a gray hoodie in the photo array, though the hood was around his shoulders and not over his head. None of the other five persons in the array was wearing a hoodie.

[6] At the time of the offense, R.H. was fifteen years old. The State alleged that R.H. was delinquent for committing what would be Level 3 armed robbery, Level 6 felony pointing a firearm, Class A misdemeanor dangerous possession of a firearm, Class A misdemeanor carrying a handgun without a license, and Class A misdemeanor resisting law enforcement if committed by an adult. At R.H.'s denial hearing, Tapps identified him as the young man in the gray or white hoodie who had demanded and taken his money while pointing a gun at him. The trial court adjudicated R.H. as charged, although it "merged" the carrying a handgun without a license finding with the dangerous possession of a firearm finding. It made R.H. a ward of the Department of Correction until he is twenty-one unless sooner released by the Department. R.H. now appeals.

## Analysis

### I. Sufficiency of the Evidence

[7] R.H. claims there is insufficient evidence to sustain his delinquency adjudications. When reviewing such a claim, we neither reweigh the evidence nor judge witness credibility. *T.G. v. State*, 3 N.E.3d 19, 23 (Ind. Ct. App. 2014), *trans. denied*. We consider only the evidence most favorable to the judgment along with any reasonable inferences therefrom in determining whether the State proved beyond a reasonable doubt that the juvenile

committed the charged offense. *Id.* We will affirm if there is substantive evidence of probative value establishing every material element of the offense. *Id.* The uncorroborated testimony of a single witness may be sufficient to sustain a delinquency adjudication. *Id.*

[8] R.H.'s overall argument is that there was a failure to adequately identify him as Tapps's robber. He directs us to purported reasons to distrust Tapps's in-court identification of him; these include Tapps's initial statement to police that the hoodie was "coverin' his face" and that, in the police photo array, R.H. was the only one wearing a hoodie. Tr. p. 73. A sole eyewitness's unequivocal identification of a defendant as the perpetrator of a crime is sufficient to sustain a conviction. *Gorman v. State*, 968 N.E.2d 845, 850 (Ind. Ct. App. 2012), *trans. denied*. There are a number of factors a fact-finder may consider when weighing the reliability of an eyewitness identification, and potential errors in eyewitness identification generally must be resolved during trial, not on appeal. *Id.*

[9] We note that, although much of R.H.'s argument pertains to the allegedly suggestive photo array prepared by Detective Hurt, R.H. did not move to suppress Tapps's identification of him based on the array being so suggestive that it violated his due process rights under the Fourteenth Amendment. *See Harris v. State*, 716 N.E.2d 406, 410 (Ind. 1999). Thus, the question of R.H.'s identification is purely one of fact. We cannot second guess the trial court's resolution of that question. Also, Tapps clarified during his trial testimony that the hoodie R.H. was wearing did not cover his entire face, but only his hair and ears. He further testified that he was able to see R.H.'s face clearly and

expressed no equivocation regarding his photo array and in-court identifications of R.H.

[10] Additionally, Tapps's identification of R.H. was not entirely without corroboration. A few hours after the robbery, police initiated a traffic stop of Tapps's stolen minivan. R.H. was one of the persons who fled from the minivan and eventually was captured by police. He was found to be carrying cash in an amount almost precisely identical to the amount Tapps said had been stolen and in the denominations Tapps described. This evidence, combined with Tapps's unequivocal identification of R.H., is sufficient to establish that R.H. robbed Tapps.

[11] R.H. also contends there is insufficient evidence that he was armed with a gun when he robbed Tapps. Specifically, he claims there is insufficient evidence to connect him with the nine-millimeter handgun found in the minivan and notes that no gun was found to match the .380-caliber ammunition found on R.H. when he was arrested. However, the State was not required to prove that he ever possessed either particular gun.

[12] In order to prove that a defendant possessed a firearm, there must be evidence that the defendant in fact was armed with a deadly weapon, not merely that the victim feared the defendant might be armed. *Gray v. State*, 903 N.E.2d 940, 944 (Ind. 2009). There is no requirement, however, that the weapon be admitted into evidence at trial. *Id.* at 943. A victim's clear testimony that he or she saw the defendant pointing a gun is sufficient to prove that the defendant was in fact

armed. *See id.* at 945 (citing *Harvey v. State*, 542 N.E.2d 198, 200 (Ind. 1989)). Here, Tapps was quite clear in his testimony that R.H. was pointing a gun at him while his cohorts attempted to steal the minivan the first time and when he demanded money from Tapps. This was not a case in which the victim thought or "figured" that the defendant had a gun. *Cf. id.* As to the fact that no gun was found on R.H. when he was captured, there certainly is a possibility he was able to dispose of it during his attempt to escape the police officers. There is sufficient evidence to prove that R.H. possessed a firearm when he robbed Tapps.

[13] Finally, R.H. claims there is insufficient evidence that he resisted law enforcement. He argues that because Officer Baker did not testify at his denial hearing, and it was Officer Baker who gave the verbal command for him and his cohorts to stop, there was insufficient evidence that the command was directed to R.H. or that R.H. heard it. We disagree. A person who knowingly or intentionally "flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop" commits Class A misdemeanor resisting law enforcement. Ind. Code § 35-44.1-3-1(a)(3).

[14] Although Officer Baker did not testify at trial, Officer Gibson did. He explained that both he and Officer Baker pulled up behind the minivan with their lights activated. He then stayed in his vehicle at first while Officer Baker and his K-9 gave chase to the three persons who exited the minivan and started

running. Officer Gibson heard Officer Baker give the command to stop, but the three persons kept running until they eventually were apprehended by Officer Baker with the help of his K-9. It is reasonable to infer that, between the two police vehicles with flashing lights and Officer Baker's verbal command to stop, R.H. knew full well that he needed to stop but did not do so. There is sufficient evidence that R.H. committed resisting law enforcement.

## II. Double Jeopardy

[15] R.H. also contends that his delinquency adjudications for both Level 3 felony armed robbery and Level 6 felony pointing a firearm violate double jeopardy principles. Indiana's double jeopardy protections apply to juvenile delinquency adjudications. *H.M. v. State*, 892 N.E.2d 679, 682 (Ind. Ct. App. 2008), *trans. denied*. One of the common law rules against double jeopardy prohibits conviction and punishment for a crime that consists of the very same act as an element of another crime for which the defendant has been convicted and punished. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002). The State concedes that R.H.'s delinquency adjudications for both armed robbery and pointing a firearm violate this rule, as the pointing of the firearm at Tapps was how he accomplished the robbery. Thus, we reverse R.H.'s adjudication for Level 6 felony pointing a firearm.[1]

---

[1] R.H.'s adjudication for dangerous possession of a firearm under Indiana Code Section 35-47-10-5, generally criminalizing possession of firearms by juveniles, does not pose a double jeopardy problem. Carrying a gun illegally is one crime and using it is another. *Guyton*, 771 N.E.2d at 1143 (quoting *Mickens v. State*, 742 N.E.2d 927, 931 (Ind. 2001)).

# Conclusion

[16] There is sufficient evidence to support R.H.'s delinquency adjudications for Level 3 armed robbery, Class A misdemeanor dangerous possession of a firearm, and Class A misdemeanor resisting law enforcement. We reverse R.H.'s adjudication for Level 6 felony pointing a firearm and direct that it be vacated from his records.

[17] Affirmed in part and reversed in part.

Najam, J., and Mathias, J., concur.