

FILED

Dec 12 2019, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Batesville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William Moore, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 12, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-884 <br><br> Appeal from the <br> Marion Superior Court <br><br> The Honorable <br> Barbara Cook Crawford, Judge <br><br> The Honorable <br> Amy Barbar, Magistrate <br><br> Trial Court Cause No. <br> 49G01-1806-F3-19086 |

**Vaidik, Chief Judge.**

# Case Summary

William Moore appeals his convictions for criminal confinement as a Level 3 felony and intimidation as a Level 5 felony—both of which were enhanced because he committed them with a "deadly weapon." William argues that his pellet gun is not a "deadly weapon" and that even if it is, it cannot be used to enhance both of his convictions. We affirm.

# Facts and Procedural History

Traci Capps has two adult sons, William and Bradley Moore. On the afternoon of June 6, 2018, Traci, Bradley, and Traci's husband, Douglas Capps, went to William's house so that Traci could drop off the laundry she did for him and pick up some personal items that belonged to his girlfriend, Alana. William and Alana lived together, but Alana had been staying with her mother ever since she and William got into an argument a few days before. When Traci knocked on William's door, there was no answer. She then walked into the house and found William sleeping on the couch. Traci woke up William to tell him that she brought over his laundry and that she needed to get some of Alana's personal items. William told his mother that she could not take any of Alana's items and to get the "f*** out" of his house. Tr. p. 13. Traci responded that she wasn't leaving until she got Alana's belongings.

As Traci walked into the kitchen, William was "literally up against [her] . . . almost like a chest belly type push." *Id.* Using his body, William pushed his

mother into the deep freezer so that her back was against the freezer and his body was blocking the door. William had a gun in his hand at the time. *Id.* at 15. Then, William "pull[ed] the gun and put[] it to" Traci's temple, telling her that he was going to "f***ing kill [her]" and "shoot [her]." *Id.* at 15-16. While William had the gun to his mother's head, she was scared that she was going to "die" and "get hurt." *Id.* at 16. Traci told William, "[I]f you are going to do it, just do it. Just shoot me, just kill me. Just get it over with." *Id.*

[4] Meanwhile, Bradley and Douglas were outside waiting when they heard the commotion inside William's house. *See id.* at 47 (Douglas explaining that about five or ten minutes after Traci went inside William's house, they heard a commotion inside). Bradley and Douglas rushed inside, where they saw that William had his mother pushed against the deep freezer. Bradley saw what he believed to be a gun in William's hand and drew his own gun. When William pointed his gun at Traci's head, Bradley pointed his gun at William. At this point, Douglas, who recognized William's gun and knew that it was a pellet gun, yelled, "Everybody calm down, it's just a pellet gun." *Id.* at 50. William then "slammed" his gun on the ground, which made a cracking noise like it broke. *Id.* at 36. Traci, Bradley, and Douglas ran out of the house and called 911. A few minutes later, William came out of the house and left.

[5] When police arrived, an officer went inside the house and saw what he believed to be a gun on the kitchen floor by the deep freezer. Upon closer inspection, the officer saw that the gun was in two pieces and that it was actually a "BB gun." *Id.* at 58. An evidence technician was called to photograph the scene and

collect evidence. The gun, which turned out to be a "$CO_2$ Power Pellet Pistol," *id.* at 36, contained the following advisement: "WARNING: Not a toy. Misuse or careless use may cause serious injury or death," Ex. 7. According to the evidence technician, the gun was not loaded. He didn't test it to see if it was operable.

[6] Thereafter, the State charged William with, among other things, criminal confinement as a Level 3 felony, enhanced from a Level 6 felony because he committed the offense while "armed with a deadly weapon, to wit: air gun and/or BB gun," and intimidation as a Level 5 felony, enhanced from a Class A misdemeanor because while committing the offense he "drew or used a deadly weapon, to wit: air gun and/or BB gun."[1] Appellant's App. Vol. II pp. 18-19; Ind. Code § 35-42-3-3(b)(3)(A); Ind. Code § 35-45-2-1(b)(2)(A). Following a bench trial, the trial court found William guilty of both counts. The court sentenced him to nine years for criminal confinement and three years for intimidation, to be served concurrently.

[7] William now appeals.

---

[1] The State also charged William with domestic battery and battery (both relating to Bradley). The trial court found him guilty of domestic battery. Because William does not challenge this conviction on appeal, we do not address it or the facts underlying it.

# Discussion and Decision

## I. Deadly Weapon

[8] William first contends that his pellet gun is not a "deadly weapon" as defined by statute and therefore the evidence is insufficient to support his convictions for criminal confinement as a Level 3 felony and intimidation as a Level 5 felony—both of which were enhanced because he committed them with a "deadly weapon." Appellant's Br. p. 8. Accordingly, William asks us to reduce his criminal-confinement conviction to a Level 6 felony and his intimidation conviction to a Class A misdemeanor.

[9] Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses. *Gray v. State*, 903 N.E.2d 940, 943 (Ind. 2009). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the judgment and will affirm the conviction if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.*

[10] A "deadly weapon" is defined, in part, as:

> (1) A loaded or unloaded firearm.
>
> (2) A destructive device, weapon, device, taser (as defined in IC 35-47-8-3) or electronic stun weapon (as defined in IC 35-47-8-1), equipment, chemical substance, or other material that in the manner it:
>
> > (A) is used;

> (B) could ordinarily be used; or
>
> (C) is intended to be used;
>
> is readily capable of causing serious bodily injury.

Ind. Code § 35-31.5-2-86. "Serious bodily injury," in turn, is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292.

[11] Although not a "firearm," a pellet or BB gun can be considered a "deadly weapon" if, in the manner it is used, could ordinarily be used, or is intended to be used, it is readily capable of causing serious bodily injury. I.C. § 35-31.5-2-86; *Davis v. State*, 835 N.E.2d 1102, 1112 (Ind. Ct. App. 2005), *trans. denied*. Whether a weapon is a "deadly weapon" is determined from a description of the weapon, the manner of its use, and the circumstances of the case. *Davis*, 835 N.E.2d at 1112. "The fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime." *Id.* (quotation omitted).

[12] William acknowledges that pellet and BB guns can be considered deadly weapons; however, he argues that his pellet gun is not a "deadly weapon"

because it was unloaded and "likely inoperable."[2] Appellant's Br. p. 9. As the State points out, this Court has already held that a disabled pellet gun can be a "deadly weapon." In *Whitfield v. State*, 699 N.E.2d 666 (Ind. Ct. App. 1998), *trans. denied*, we held that a disabled pellet gun was a "deadly weapon" because "pellet guns are virtually indistinguishable from the real caliber guns that they are modeled after" and the victim "was so frightened that he could hardly speak." *Id.* at 671.

[13] The same can be said here. William put his pellet gun to his mother's temple and told her that he was going to "f***ing kill [her]" and "shoot [her]." Traci thought that she was going to die and told her son, "Just get it over with." In addition, Traci, Bradley, and the police officer initially believed that William's pellet gun was a real gun, and photos of the gun were admitted into evidence at trial. *See* Exs. 3-8. Accordingly, we find that there is substantial evidence of probative value to support the factfinder's determination that William's pellet gun is a "deadly weapon."

## II. Double Jeopardy

[14] William next contends that even if his pellet gun is a "deadly weapon," his criminal-confinement and intimidation convictions violate Indiana's double-jeopardy principles because they were both enhanced "based on the same

---

[2] It's unclear if William's argument is that the pellet gun was inoperable because it was unloaded or because it was in two pieces. If the latter, we note that the record shows that the gun was in one piece until William "slammed" it on the ground.

**possession** [of] a single unloaded pellet gun." Appellant's Br. p. 13 (emphasis added). William does not argue that his separate convictions for criminal confinement and intimidation cannot stand; rather, he asks us to remove the "deadly weapon" enhancement from the lesser offense.

In support of his argument, William cites the Indiana Supreme Court's recent decision in *Springfield v. State*, 124 N.E.3d 610 (Ind. 2019), *reh'g denied.* In that case, the defendant was convicted of Level 4 felony possession of cocaine and Level 5 felony possession of a narcotic drug, both of which were enhanced because the defendant committed the offenses while in "possession" of a firearm. *Id.* at 612. The defendant argued that the enhancements to his convictions violated Indiana double-jeopardy principles because they were based on the same evidence—his possession of a single firearm. Our Supreme Court held as follows:

> Although the **use** of the same weapon during the commission of two or more distinct offenses may be used to enhance the level of each offense without offending double jeopardy protections, enhancing the level of two separate offenses for the continuous **possession** of a firearm would violate these principles. The appropriate remedy to address such violations is to reduce one of the offending convictions to a lesser included offense, if doing so will eliminate the violation.

*Id.* (citations omitted).

Here, William was convicted of criminal confinement as a Level 3 felony because he committed the offense while armed with a deadly weapon and

intimidation as a Level 5 felony because while committing the offense he drew or used a deadly weapon. Indeed, the evidence shows that William pushed Traci against a deep freezer while he had a gun in his hand and then put the gun to her head, threatening to kill her. Unlike *Springfield*, William's convictions for these distinct offenses are based on his use—as opposed to his possession—of the gun. Accordingly, there is no double-jeopardy violation. *See Leggs v. State*, 966 N.E.2d 204, 209 (Ind. Ct. App. 2012) (holding that the defendant "was not subjected to double jeopardy when he was convicted of multiple crimes enhanced by the use of a knife"). We therefore affirm William's convictions.

Affirmed.

Riley, J., and Bradford, J., concur.